**Rubin LLC**  **Return Date:  January 29, 2016 at 11 a.m.**
**345 Seventh Avenue, 21st Floor**
**New York, New York 10001**
**Tel:  212. 390.8054**
**Fax: 212.390.8064**
**E-mail:  <u>prubin@rubinlawllc.com</u>**
**Paul A. Rubin**

*Counsel for LTC Consulting Services, LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------x

| In re: | : | Chapter 11 |
|---|---|---|
| | : | |
| **HHH CHOICES HEALTH PLAN, INC.** | : | Case No. 15-11158 (MEW) |
| | : | Case No. 15-13264 |
| | : | Case No. 16-10028 |
| | : | |
| | : | (JOINTLY ADMINISTERED) |
| Debtor. | : | |

--------------------------------------------------------x

**OBJECTION OF LTC CONSULTING SERVICES, LLC TO DEBTORS' JOINT MOTION FOR INTERIM AND FINAL ORDERS PURSUANT TO SECTIONS 105, 361, 362, 363, 364, 503 AND 507 OF BANKRUPTCY CODE (I) AUTHORIZING DEBTOR HEBREW HOSPITAL SENIOR HOUSING, INC., TO (A) OBTAIN POST-PETITION FINANCING AND (B) USE CASH COLLATERAL, (II) AUTHORIZING DEBTOR HEBREW HOSPITAL SENIOR HOUSING INC., TO EXTEND POST-PETITION FINANCING (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, (IV) MODIFYING THE AUTOMATIC STAY, AND (V) SCHEDULING <u>FINAL HEARING PURSUANT TO FED. R. BANKR. P. 4001(B) AND (C)</u>**

LTC Consulting Services, LLC ("LTC"), an unsecured creditor of Hebrew Hospital Home of Westchester Inc. ("HHHW"), by its undersigned counsel, hereby objects to Debtors' Joint Motion for Interim and Final Orders Pursuant to Sections 105, 361, 362, 363, 364, 503 and 507 of Bankruptcy Code (I) Authorizing Debtor Hebrew Hospital Senior Housing, Inc., to (A) Obtain Post-Petition Financing and (B) Use Cash Collateral, (II) Authorizing Debtor Hebrew Hospital

Senior Housing Inc., to Extend Post-Petition Financing (III) Granting Liens and Superpriority Claims, (IV) Modifying the Automatic Stay, and (V) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c), and hereby represents as follows:

### Preliminary Statement

1.      LTC appreciates the desire to protect the interests of the residents Hebrew Hospital Senior Housing, Inc. ("Senior Housing"), and believes that this can be accomplished through means other than repeated raids on the assets of HHHW.  HHHW has already loaned $3.5 million in the form of a bridge loan to Senior Housing, and it is most revealing that the instant motion, submitted by conflicted management of Senior Housing and HHHW, which are not-for-profit entities, does not propose that Senior Living obtain any DIP financing from the estate of a related debtor that they also manage, HHH Choices Health Plan, LLC ("Choices").

2.      The proposed DIP financing in the form of yet another loan from HHHW is not in the best interests of HHHW or its creditors.  It represents a bridge to nowhere.  There is no potential sale of Senior Housing's assets on the horizon.  There is no one positioned to enforce the proposed DIP loan on behalf of HHHW.  The relief sought would contravene an order entered just three months ago by the Westchester County Supreme Court and cannot be granted in light of Bankruptcy Code sections 363(d)(1) and 541(f).  The New York State Attorney General's Office, which was involved when the $3.5 million bridge loan was approved, has expressed deep reservations concerning various aspects of the proposed loan as well.

3.      Currently, there is no independent representative participating in this matter on behalf of the unsecured creditors of HHHW.  LTC respectfully submits that this sensitive situation requires proactive involvement of such a representative to help forge a prompt consensual resolution of this matter.

**Factual Background**

4.  On or about April 1, 2015, Hebrew Hospital Home of Westchester, Inc. ("HHHW") was authorized by order of the Supreme Court of the State of New York, County of Westchester (the "Supreme Court"), to sell substantially all of its assets. HHHW was required by the Supreme Court's sale order to hold most of the cash proceeds from that sale in escrow.

5.  By order entered October 21, 2015, the Supreme Court authorized HHHW to make a bridge loan in the amount of $3.5 million from the escrowed proceeds to Hebrew Hospital Senior Housing, Inc. ("Senior Housing"). A copy of that order (the "Supreme Court Order") is annexed hereto as Exhibit A. The Supreme Court Order imposes several terms and conditions to that bridge loan, most notably that it will become immediately due and must be repaid to HHHW upon Senior Housing obtaining debtor-in-possession financing upon the issuance of a final order of this Court (Exhibit A, p.3, ¶ (b)).

6.  Similarly, Senior Housing, HHHW, the Office of the Attorney General of the State of New York (the "Attorney General"), and one Carl Winterrose, as agent for the Westchester Meadows Resident Council, entered into a Restructuring Support and Loan Agreement dated as of October 20, 2015 (the "RSA"). A copy of that agreement has been filed with the Court [Case No. 15-13264, Docket No. 2, Ex. A]. The RSA also provides that the $3.5 million bridge loan from HHHW to Senior Living will be immediately due and payable from the proceeds of debtor-in-possession financing to be obtained by Senior Housing in the chapter 11 case it was then anticipated to file, whereupon HHHW would return the $3.5 million to the escrow account containing the funds from the sale of HHHW's assets being held pursuant to the Supreme Court's sale order.

7. On May 4, 2015, certain petitioning creditors filed an involuntary bankruptcy petition under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") against HHH Choices Health Plan, LLC ("Choices"). An order for relief was subsequently entered by the Court, and Choices is now a debtor-in-possession, managing its property and in control of its assets.

8. An official committee of unsecured creditors of Choices has been appointed and is functioning independently in these case.

9. On December 9, 2015, Senior Housing filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Senior Housing operates a continuing care retirement community. Senior Housing is now a debtor-in-possession, managing its property and in control of its assets.

10. An official committee of unsecured creditors of Senior Housing has been appointed and is functioning independently in these cases.

11. On December 9, 2015, Senior Housing filed a motion seeking authorization for it to obtain debtor-in-possession financing from an unrelated third party, and to repay the $3.5 million loan from HHHW from the proceeds thereof, as required by the State Court Order and the RSA.

12. On December 14, 2015, the Official Committee of Unsecured Creditors of Choices filed an objection to that DIP financing motion, arguing among other things, that it had not had sufficient time to review the $3.5 million loan approved by the Supreme Court after notice to the Attorney General. The Debtor withdrew its motion for approval of that DIP financing motion.

13. On January 8, 2016, HHHW filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. HHHW is now a debtor-in-possession, managing its property and in

control of its assets.

14. To date, no official committee of unsecured creditors of HHHW has been formed.

15. Choices, Senior Housing and HHHW are controlled by interlocking senior management and a common chief executive officer. Unlike Choices, Senior Housing and HHHW are New York registered not-for-profit corporations.

**The Motion**

16. On January 8, 2016, Senior Housing and HHHW filed this second debtor-in-possession financing motion. Rather than comply with the requirements of the State Court Order and the Debtors' RSA with the Attorney General by providing for repayment of HHHW's $3.5 million bridge loan to Senior Housing, this motion actually proposes quite the opposite of what these Debtors previously promised: It would require HHHW to make a new loan to Senior Housing, this time in the amount of $2 million, and permit a carveout of $400,000 for professionals, consultants and advisors.

17. There does not appear to be any independent fiduciary—among management, counsel, financial advisors or the existing creditors' committees—who negotiated for HHHW any of the terms of the proposed new $2 million loan from HHHW to Senior Living. The 50-page loan agreement that Senior Housing and HHHW filed with this second DIP financing motion does not contain a specified maturity date by which the proposed new loan would be due and payable.

18. The subject motion does not state whether Senior Housing made efforts to obtain DIP financing from Choices, whether HHHW's governing instruments permit it to extend a DIP financing, especially where there is no maturity date for the loan, nor does it state who advised HHHW in connection the proposed loan or who authorized it on its behalf, whether HHHW obtained or attempted to obtain the consent of the Attorney General to the proposed loan of

unspecified duration, or how the proposed DIP financing would supposedly further the stated mission of HHHW.

19. The motion also does not identify any specific potential source of repayment of either the proposed new loan or of the pre-petition $3.5 million bridge loan. It does not state that a proposed stalking horse bidder for assets of Senior Housing has been identified.

20. The motion fails to explain how the DIP loan could be expected to be enforced on behalf of HHHW, in light of the fact that the most senior officers of HHHW also the most senior officers of Senior Living.

**Objection**

21. This second DIP financing motion should be denied.

22. Sections 363(d) and 541(f) of the Bankruptcy Code require that the transfer of property by a not-for-profit corporation comply with applicable nonbankruptcy law governing such a transfer. Specifically, section 363(d) provides that "[t]he trustee may use, sell or lease property under subsection (b) or (c) of this section only – (1) in accordance with applicable nonbankruptcy law that governs the transfer of property by a corporation that is not a moneyed, business or commercial corporation…" Section 541(f) further provides that "property that is held by a debtor that is a corporation described in section 501(c)(3) of the Internal Revenue Code of 1986 and exempt from tax under section 501(a) of such Code may be transferred to an entity that is not such a corporation, but only under the same conditions as would apply if the debtor had not filed a case…" Pursuant to section 1221 of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, sections 363(d) and 541(f) of the Bankruptcy Code are applicable to all cases pending or filed on or after April 20, 2005.

23. Here, the Debtors are ignoring the requirement of the State Court Order that the $3.5 million bridge loan from HHHW to Senior Housing must be fully repaid from the proceeds of DIP financing to be obtained by Senior Housing pursuant to a final order of this Court. The Bankruptcy Code requires not-for-profit debtors seeking to use property of the estate to obey applicable non-bankruptcy law. There is no special dispensation under the Bankruptcy Code authorizing HHHW to violate the Supreme Court Order.

24. Notably, the Westchester Meadows Resident Council, which is a party to the RSA, and which was represented at the time that agreement was made by the same law firm currently representing the Senior Housing creditors' committee, cannot fault creditors of HHHW for seeking compliance with the RSA. Indeed, on December 9, 2015, Senior Housing filed with this Court a motion to assume the RSA. [Case No. 15-13264, ECF Docket No. 2].

25. Moreover, counsel for the Attorney General has advised LTC's undersigned counsel that the Supreme Court approved the $3.5 million only with significant reluctance. That fact provides a window of insight into what transpired before HHHW filed its bankruptcy case.

26. Additionally, any proposed DIP financing must be fair, reasonable and adequate under the circumstances. *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40-42 (Bankr. S.D.N.Y. 1990). In a case involving multiple debtors, the debtors, who are fiduciaries, owe duties to refrain from favoring or appearing to favor one or another of their estates and its creditors over another. *In re Innkeepers USA Trust*, 442 B.R. 227, 235 (Bankr. S.D.N.Y. 2010); *In re Adelphia Communications Corp.*, 336 B.R. 610, 669-671 (Bankr. S.D.N.Y. 2006).

27. In this case, the proposed loan is not fair and reasonable from the perspective of the estate of HHHW. HHHW does not need to make the loan. It is not operating and is supposed to be winding down its affairs. There is no indication that this loan was negotiated by an untainted,

independent fiduciary charged with representing or protecting purely the interests of HHHW or its estate. The loan is the result of management who are laboring under an irreconcilable conflict of interest and who are advised by counsel who are similarly conflicted, and it does not appear to to be the result of arms' length negotiations. One cannot expect existing management, who control both Senior Housing and HHHW, to cause HHHW to enforce the terms of the loan against Senior Housing. There is no proposed sale of Senior Living in sight, and there is no evidence that the proposed DIP loan will produce to a going-concern sale of Senior Housing.

28. The only argument LTC has heard in favor of this loan from the perspective of HHHW is that its estate may face liability for the claim so-called "union claim" for pension withdrawal liability likely to be asserted against all of the debtors and perhaps non-debtor parties. But that claim has not been reviewed by an independent fiduciary acting solely for HHHW. Furthermore, HHHW need not be in bankruptcy, nor must it await a sale of assets of Senior Living, in order to negotiate with the union concerning that claim.

29. Most telling is the fact that Debtors have not proposed that Choices make the DIP loan. Since HHHW has already loaned $3.5 million to Senior Housing and seen the promise of prompt repayment breached, it would only be appropriate to require Choices to contribute whatever resources it can to a DIP loan—but the instant motion makes no such proposal.

30. The HHHW estate is virtually unprotected. It does not have any independent fiduciary seeking to protect its interests. As a result, its assets have been invaded to benefit another debtor, and it is at risk of this happening again in these cases absent the appointment of such a fiduciary.

**Joinder**

31.     LTC hereby joins in and incorporates by reference the objections lodged by the Attorney General and other parties-in-interest in these cases.

32.     LTC reserves the right to respond to any proposed modification to the pending motion or the proposed DIP loan that may be submitted by any of the Debtors.

**Conclusion**

33.     For the foregoing reasons, LTC respectfully requests that the court deny the motion and grant the unsecured creditors of HHHW such other further relief as is just and proper.

Dated:  New York, New York
        January 27, 2016

                                    RUBIN LLC

                                    By:\s\ Paul A. Rubin
                                            Paul A. Rubin

                                    345 Seventh Avenue, 21st Floor
                                    New York, New York 10001
                                    Tel: 212.390.8054
                                    Fax: 212.390.8064
                                    prubin@rubinlawllc.com

                                    *Counsel for LTC Consulting Services, LLC*