At an IAS part of the Supreme Court of the State of New York, held in and for the County of Westchester at 111 Dr. Martin Luther King, Jr. Blvd, White Plains, New York 10601, on October 21, 2015.

Present: Hon David S. Zuckerman, A.J.S.C.

-----------------------------------------------------------------X

In the Matter of the Application of

Index No.: 54686/15

HEBREW HOSPITAL HOME OF WESTCHESTER, INC.         ORDER
For Approval to sell a substantial asset, the real property
and business located at 61 Grasslands Road, Valhalla,
New York pursuant to Sections 510 and 511 of the
Not-For-Profit Corporation Law
                              Petitioner.
-----------------------------------------------------------------X

Petitioner, Hebrew Hospital Home of Westchester, Inc., by its attorneys, McCullough, Goldberger & Staudt, LLP, in accordance with a prior Order of the Court in this matter dated April 1, 2015, having requested the release of the sum of $3,500,000.00 currently held in escrow pursuant to said prior Order, for the purpose of making an interest-bearing loan (the "Loan") to a related entity, Hebrew Hospital Senior Housing, Inc. ("Hebrew Senior Housing"), and said application having regularly come on to be heard,

And the Attorney General of the State of New York (the "Attorney General") having consented,

And notice of this request to be provided to all creditors of Petitioner as directed by the Court,

And approval of the Boards of Directors of Petitioner, Hebrew Senior Housing and HHCS, Inc. having been obtained,

EAST\109340980.6                                     1

Now upon reading and filing the Affirmation, dated October 13, 2015, and the Restructuring Support and Loan Agreement (the "Loan Agreement"), dated October 20, 2015, attached hereto as Exhibit 1, and after due deliberation having been held thereon, it is

**ORDERED**, that the amount of $3,500,000.00 may be released from the escrow account held by attorneys for Petitioner, to be loaned to Petitioner's related corporate entity, Hebrew Senior Housing, the owner and operator of the continuing care retirement community known as Westchester Meadows, upon the terms and conditions set forth in the Loan Agreement, which is incorporated by reference and made a part of this Order, the principal terms of which are as follows:

(a) Except as set forth herein, the Loan shall be used by Hebrew Senior Housing solely to (i) pay resident refunds in the amount of $2,465,391.00; and (ii) to pay certain operational expenses incurred by or on behalf of Hebrew Senior Housing in the amounts and categories reflected in a budget reasonably acceptable to the Attorney General and which is annexed to the Loan Agreement as Exhibit B (the "Budget"), subject to a ten percent (10%) variance in the aggregate and a twenty percent (20%) variance by line item. Hebrew Senior Housing shall provide biweekly certifications of expenditures to the Attorney General. Notwithstanding the "Professional Fees/Retainer" line item on the Budget, the Loan shall not be used to pay the fees and expenses of Hebrew Senior Housing and/or Petitioner's professionals. The Attorney General, Hebrew Senior Housing and Petitioner acknowledge and agree, however, that Hebrew Senior Housing may use the proceeds of the Loan to pay the fees and expenses of DLA Piper LLP (US) and CohnReznick LLP invoiced prior to commencement of Hebrew Senior Housing's bankruptcy case in an amount not to exceed $200,000;

(b) The Loan shall bear interest at the rate of 5.5% per annum, be secured by a subordinate mortgage, and shall be immediately due and repaid to Petitioner from debtor-in-possession financing ("DIP Financing") upon the issuance of a final DIP Order by the Bankruptcy Court;

(c) Hebrew Senior Housing shall produce any and all information and documentation reasonably requested by the Attorney General, including but not limited to, all information and documentation involving, evidencing, referring to, discussing, describing, reflecting, identifying or in any way pertaining to, in whole or in part, the operations of Westchester Meadows, the financial activities of Hebrew Senior Housing and the board activities of Hebrew Senior Housing for the period of three (3) years prior to the date of the Loan, without the need for legal process. Hebrew Senior Housing shall not be required to produce any information and documentation that is subject to the attorney client or work product privileges or any other privilege, or which is confidential under any applicable law. No production of any document hereunder shall implicitly or explicitly waive or diminish any privilege, including but not limited to the attorney client or work product privileges, or any right of confidentiality under any applicable law, belonging to any party to the Loan Agreement or to any other person, including but not limited to any officer, board member, agent or employee of any party.

(d) Hebrew Senior Housing will agree to cause appropriate members of its management, board of directors and advisors to meet with the Attorney General, the Westchester Meadows Resident Council and its professionals and any other New York state agency that requests to be present at such meeting on or before October 30, 2015 and in any event before the chapter 11 filing. The meeting will take place at a time and location reasonably acceptable to all attendees.

EAST\109340980.6                    3

(e) Hebrew Senior Housing shall be required to keep the Attorney General and the Residents' Professionals advised of the status of obtaining DIP Financing. Hebrew Senior Housing shall use reasonable and good faith efforts to obtain a commitment for DIP financing by October 31, 2015. The selection of a DIP lender and the budget and terms of the DIP financing shall be made and agreed to after consultation with the Attorney General and the Residents' Professionals.

(f) Hebrew Senior Housing shall be required to keep the Attorney General and the Residents' Professionals advised of the status of obtaining a stalking horse purchaser. The selection of a stalking horse purchase shall be made and agreed to after consultation with the Attorney General and the Residents' Professionals. A primary consideration in selecting a stalking horse purchaser shall be an agreement by any such bidder to assume in full all current agreements with the residents of Westchester Meadows including the assumption of resident deposit refund obligations.

(g) Hebrew Senior Housing will file for chapter 11 bankruptcy no later than November 30, 2015, subject to Board of Directors authorization of the filing.

(h) The form of mortgage and the Loan Agreement to be executed by Hebrew Home, Hebrew Senior Housing, the Westchester Meadows Resident Council and the Office of the Attorney General, as applicable, shall be submitted to the Attorney General prior to execution and shall be acceptable to the Attorney General. Prior to the release of any funds, the Loan Agreement shall be executed by Hebrew Home and Hebrew Senior Housing. Proof of a validly perfected mortgage in favor of Petitioner shall be provided to the Attorney General and the Court prior to the release of any funds;

(i) Upon the occurrence of a Default Event (as defined in the Loan Agreement), Petitioner, Hebrew Senior Housing and the Attorney General agree to schedule an emergency hearing before this Court or, following Hebrew Senior Housing's bankruptcy filing, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), to the extent the Bankruptcy Court has jurisdiction under applicable law, for a determination as to the appropriate remedy related to the occurrence of such Default Event, which may include, but is not limited to, requiring Hebrew Senior Housing to immediately repay the Loan and all interest accrued thereon to Petitioner.

Enter

Hon. David S. Zuckerman
A.J.S.C.

THE ATTORNEY GENERAL HEREBY APPEARS HEREIN, HAS NO OBJECTION TO THE GRANTING OF JUDICIAL APPROVAL HEREON, ACKNOWLEDGES RECEIPT OF STATUTORY NOTICE AND DEMANDS SERVICE OF ALL PAPERS SUBMITTED HEREIN INCLUDING ALL ORDERS, JUDGMENTS AND ENDORSEMENTS OF THE COURT

ASSISTANT ATTORNEY GENERAL    DATE