**Proposed Hearing Date: February 25, 2016, 11:00 a.m. ET**
**Objection Deadline: To Be Determined**

**HARTER SECREST & EMERY LLP**
· *Counsel/Proposed Counsel to Debtors*[2]
12 Fountain Plaza, Suite 400
Buffalo, New York 14202-2293
(716) 853-1616
Raymond L. Fink, Esq. / rfink@hselaw.com
John A. Mueller, Esq. / jmueller@hselaw.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| HHH CHOICES HEALTH PLAN, LLC, ET AL. | CASE NO. 15-11158 (MEW) |
| | CASE NO. 15-13264 |
| DEBTORS. | CASE NO. 16-10028 |
| | (JOINTLY ADMINISTERED) |

**MOTION FOR ENTRY OF PROPOSED STIPULATION AND ORDER
BETWEEN HEBREW HOSPITAL HOME OF WESTCHESTER, INC. AND HHH
ACQUISITION: (1) APPROVING
ORDINARY COURSE PAYMENTS OF MEDICARE/MEDICAID REIMBURSEMENT
FUNDS TO HHH ACQUISITION AND (2) ORDERING AN
ACCOUNTING BY HEBREW HOSPITAL HOME OF WESTCHESTER, INC. OF ALL
MEDICARE/MEDICAID
REIMBURSEMENT FUNDS RECEIVED BY DEBTOR ON OR AFTER MAY 1, 2015**

Debtor and debtor-in-possession, Hebrew Hospital Home of Westchester, Inc. (the

"**Debtor**") and HHH Acquisition, LLC ("**HHH Acquisition**"), hereby moves this Court pursuant

to 11 U.S.C §§ 105(a), 363 and 541(b) and Rule 9019 of the Federal Bankruptcy Rules of

Procedure (the "**Motion**") for entry of the proposed Stipulation and Order Between Debtor and

HHH Acquisition (1) Approving Debtor's Ordinary Course Payments of Medicare/Medicaid

---

[2] Harter Secrest & Emery LLP is approved legal counsel to Debtors, HHH Choices [Docket No. 37] and HHSH [Docket No. 82], with a retention application pending for HHHW.

Reimbursement Funds to HHH Acquisition; and (2) Ordering an Accounting By Debtor of all Medicare/Medicaid Reimbursement Funds Received by the Debtor on or After May 1, 2015 (the "Stipulation") attached hereto as **Exhibit A** and respectfully represents as follows:

### Relevant Background

1.    On or about November 7, 2013, the Debtor, as Seller, and HHH Acquisition, as Buyer, entered into an Asset Purchase Agreement (the "**Asset Purchase Agreement**"), for the sale of certain assets relating to The Grove, a 160-bed skilled nursing facility located at 61 Grasslands Road, Valhalla, New York (the "**Facility**").   Under the terms of the Asset Purchase Agreement, the Debtor transferred and conveyed to HHH Acquisition all of Debtor's right, title and interest in certain Purchased Assets as of the April 30, 2015 Closing Date, among which Purchased Assets were (1) the Facility; and (2) the Facility's existing Medicare provider agreements and provider number and (3) the Facility's Medicaid provider agreement and provider number.   After the April 30, 2015 Closing Date, consistent with common practice, HHH Acquisition continued to utilize the Debtor's Medicare and Medicaid provider numbers pending reassignment of same by the respective agencies.   Prior to the Petition Date, Medicare and Medicaid reimbursement payments made on account of HHH Acquisition's ownership and operation of the Facility were made into a bank account controlled by the Debtor, maintained at Wells Fargo Bank (the "**Debtor's Account**") and transferred thereafter to HHH Acquisition.

2.    Post-petition, the Debtor and HHH Acquisition entered into the Stipulation to clarify and confirm certain rights and obligations under the Asset Purchase Agreement, including, *inter alia*, that any **Medicare** and *Medicaid* payments made on account of HHH Acquisition's ownership and operation of the Facility are not property of the Debtor's

2

bankruptcy estate and should continue to be paid by the Debtor to HHH Acquisition as payments made in the ordinary course.

3.      Through this Motion, Debtor and HHH Acquisition seeks an order from the Court pursuant to 11 U.S.C. §§ 105(a) and 541 and Federal Bankruptcy Rule of Procedure 9019 approving the Stipulation.

### Statement of Facts

4.      Debtor commenced this Chapter 11 proceeding in this Court on January 8, 2016 (the "**Petition Date**").

5.      Debtor is a New York not-for-profit corporation formed on February 17, 1993 pursuant to Section 402 of the Not-For Profit Corporation Law.  The Debtor does not have any shareholders.  It is a Board directed corporation and one of several distinct legal entities within the larger Hebrew Hospital Home health system, which was initially founded in 1928 as a not-for-profit nursing home in the Tremont section of the Bronx.

6.      On or about November 7, 2013, the Debtor, as Seller, and HHH Acquisition, as Buyer, entered into the Asset Purchase Agreement for the sale of certain assets relating to the Facility.

7.      The Asset Purchase Agreement went into effect on its Closing Date, which closing occurred on April 30, 2015.

8.      Under the terms of the Asset Purchase Agreement, the Debtor transferred and conveyed to HHH Acquisition all of the Debtor's right, title and interest in certain Purchased Assets as of the Closing Date, among which Purchased Assets were (1) the Facility's **Medicare** provider agreements and provider number and (2) the Facility's *Medicaid* provider agreement and provider number.

4861710_2

9.      Under the terms of the Asset Purchase Agreement, the Debtor agreed that, if it received any monies subsequent to the Closing Date arising from HHH Acquisition's ownership and operation of the Facility, all such monies would be paid over to HHH Acquisition within ten (10) business days of receipt thereof by Debtor, together with all statements and documents related thereto.

10.     The sale of the Purchased Assets under the Asset Purchase Agreement constituted a change of ownership of the Facility to HHH Acquisition that effected an automatic assignment of the Facility's **Medicare** provider agreement to HHH Acquisition under the applicable **Medicare** regulations (*see* 42 C.F.R. § 489.18).

11.     The Facility's **Medicare** provider number was assigned to HHH Acquisition on or about September 21, 2015.

12.     The sale of the Purchased Assets under the Asset Purchase Agreement constituted a change of ownership that required the automatic assignment of the Facility's *Medicaid* provider agreement to HHH Acquisition under the applicable *Medicaid* regulation (*see* 42 C.F.R. § 442.14).

13.     The Facility's *Medicaid* provider number is still pending assignment to HHH Acquisition.

14.     Prior to the Petition Date, **Medicare** and *Medicaid* payments made on account of HHH Acquisition's ownership and operation of the Facility were made into a bank account controlled by the Debtor, maintained at Wells Fargo Bank (the "**Debtor's Account**"), and were regularly transferred to HHH Acquisition ("**HHH Acquisition Reimbursements**").

15.     The Debtor acknowledges and agrees that HHH Acquisition Reimbursements deposited in the Debtor's Account belong to HHH Acquisition and are not property of the

4

Debtor's estate, except to the extent that such payments related to services rendered prior to May 1, 2015.

16.    Debtor and HHH Acquisition anticipate that HHH Acquisition Reimbursements from *Medicaid* will continue to be made into the Debtor's Account for some period of time until such time as the assignment of the Facility's *Medicaid* provider number to HHH Acquisition is finalized.

17.    As of January 14, 2016, $382,422.74 remained in the Debtor's Account for the account of HHH Acquisition, which amount substantially arises from HHH Acquisition's ownership and operation of the Facility after the Closing Date.

18.    On January 15, 2016, the Debtor transferred $300,000.00 in HHH Acquisition Reimbursements from the Debtor's Account to HHH Acquisition in the ordinary course (the "**January 15, 2016 Transfer**").

19.    On January 19, 2016, the Debtor transferred to HHH Acquisition $82,422.74 in HHH Acquisition Reimbursements from the Debtor's Account to HHH Acquisition in the ordinary course (the "**January 19, 2016 Transfer**").

20.    HHH Acquisition's initial investigation reveals that in excess of $200,000 in additional *Medicaid* payments made on account of HHH Acquisition's ownership and operation of the Facility may remain to be paid by the Debtor to HHH Acquisition.

21.    The Debtor and HHH Acquisition agree and acknowledge that a reconciliation and accounting is necessary and proper to ensure that all **Medicare** and *Medicaid* payments that are not property of the Debtor's estate are appropriately accounted for (the "**Accounting**").

5

22.    To clarify certain of the Debtor's and HHH Acquisition's rights and obligations under the Asset Purchase Agreement post-bankruptcy, the Parties entered into the Stipulation, which provides and clarifies, *inter alia*, the following:

    a.  HHH Acquisition Reimbursements related to services rendered after April 30, 2015 are not property of the Debtor's estate and belong to HHH Acquisition.

    b.  The January 15, 2016 Transfer and the January 19, 2016 Transfer are consistent with the prepetition ordinary course transfers to HHH Acquisition of Medicaid payments deposited into the Debtor's Account.

    c.  Other similar future transfers by Debtor to HHH Acquisition are consistent with the prepetition ordinary course transfers to HHH Acquisition of Medicaid payments deposited into the Debtor's Account.

    d.  Within three (3) business days after the Court's approval and entry of the Stipulation, the Debtor shall make arrangements for the **Medicare** and ***Medicaid*** funds deposited in the Debtor's Account for services rendered by HHH Acquisition after the Closing Date, going forward to be automatically transferred by wire to an account designated by HHH Acquisition every ten (10) business days, until such time as the pending assignment of the Facility's ***Medicaid*** provider number is made to HHH Acquisition.

    e.  The Debtor shall continue to segregate all funds for **Medicare** and ***Medicaid*** payments made on account of HHH Acquisition's ownership and operation of the Facility.

    f.   Within twenty (20) business days after the Court's approval of this Stipulation, the Debtor shall provide an Accounting of all **Medicare** and *Medicaid* payments arising from HHH Acquisition's ownership and operation of the Facility after the Closing Date, together with all statements and documentation related thereto.

## Relief Requested

23.    Debtor and HHH Acquisition request the Court's approval and entry of the Stipulation pursuant to 11 U.S.C. §§ 105(a) and 541 and Federal Rule of Bankruptcy Procedure 9019 on the grounds that the Stipulation is in the best interests of Debtor's estate.

## Legal Authority and Standards

24.    Section 105(a) of the Bankruptcy Code authorizes this Court to issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of Title 11. *See* 11 U.S.C. § 105(a).

25.    Section 541(b) of the Bankruptcy Code excludes from the property of the estate "any power that the debtor may exercise solely for the benefit of an entity other than the debtor." *See* 11 U.S.C. § 541(b).

26.    Federal Rule of Bankruptcy Procedure 9019(a) authorizes a court, after notice and a hearing, to approve a compromise or settlement of controversy. The rule provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement." *See* Fed. R. Bankr. P. 9019(a). Pursuant to Rule 9019, bankruptcy courts can approve a compromise or settlement if it is in the best interest of the estate. *See Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

4861710_2

27.    "As a general matter, settlements or compromises are favored in bankruptcy and, in fact, encouraged." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010); *In re Hilsen*, 404 B.R. 58, 69 (Bankr. E.D.N.Y. 2009) (internal citations omitted) (Compromises "are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate.").

28.    Although Rule 9019(a) contains no standards by which approval of a settlement should be judged, courts have developed standards to evaluate if a settlement is fair and equitable, and, to that end, courts in this Circuit have identified factors to be considered in determining whether to approve a settlement. *Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC)*, 478 F.3d 452, 462 (2d Cir. 2007). The factors (the so-called "**Iridium Factors**") are: "(1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment; (3) the paramount interests of the creditors, including each affected class' relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (4) whether other parties in interest support the settlement; (5) the competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement; (6) the nature and breadth of releases to be obtained by officers and directors; and (7) the extent to which the settlement is the product of arm's length bargaining." *Id.* (internal citations omitted).

29.    In determining whether to approve a settlement, the court must make an independent determination that the settlement is fair and reasonable. *Nellis v. Shugrue*, 165 B.R. 115, 122-23 (S.D.N.Y. 1993). The decision to accept or reject a compromise or settlement is

within the sound discretion of the bankruptcy court. *Id.* at 121-22; *Drexel Burnham*, 134 B.R. at 505. Further, a court may exercise its discretion "in light of the general public policy favoring settlements." *In re Hibbard Brown & Co.*, 217 B.R. 41, 46 (Bankr. S.D.N.Y. 1999); *see also Nellis*, 165 B.R. at 123 ("[T]he general rule [is] that settlements are favored and, in fact, encouraged by the approval process.").

30.     In evaluating whether to approve a compromise, "a court may rely on the opinion of the debtor, parties to the settlement, and the professionals." *In re Dewey & Leboeuf LLP*, 478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012) (citing *In re Chemtura Corp.*, 439 B.R. 561, 594 (Bankr. S.D.N.Y. 2010)); *Nellis*, 165 B.R. at 122-23 ("The court may consider the opinions proffered by the debtor or trustee that the settlement is fair and reasonable."). A bankruptcy court should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'" *In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983) (internal citations omitted); *see also Drexel Burnham*, 134 B.R. at 496 (a settlement need not be the best that could have been achieved, but only must not "fall below the lowest point in the range of reasonableness.").

31.     Notably, in considering whether to approve a proposed settlement "it is not necessary for the court to conduct a 'mini-trial' of the facts or the merits underlying the dispute." *Hilsen*, 404 B.R. at 69 (citing *In re Adelphia Comm. Corp.*, 327 B.R. 143, 159 (Bankr. S.D.N.Y. 2005)); *see also Purofied Down Prods. Corp.*, 150 B.R. at 522 ("[T]he court need not conduct a 'mini-trial' to determine the merits of the underlying litigation."). It "is not the court's task to determine whether the settlement proposed by the parties is the best possible, or fairest, or most appropriate resolution of the dispute." *Hilsen*, 404 B.R. at 70; *see also In re MF Global Inc.*, No. 11-2790, 2012 Bankr. LEXIS 3701, at *5 (Bankr. S.D.N.Y Aug. 10, 2012) (recognizing that

4861710_2

although courts have the discretion to approve settlements, the business judgment of the debtor in recommending a settlement should be considered). To approve a compromise or settlement under Rule 9019(a), a court need only find that the compromise or settlement is fair and equitable, reasonable, and in the best interests of the debtors' estate. *See, e.g., In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd* 17 F.3d 600 (2d Cir. 1994).

32.    As is set forth herein, the Debtor respectfully submits that consideration of the *Iridium* factors strongly favors approval of the Stipulation. Further, Debtor respectfully submits that the Stipulation should be approved because it is fair, reasonable and in the best interests of estate.

**B.    The Stipulation Should Be Approved**

33.    A review of the relevant facts demonstrates that the Debtor's execution of the Stipulation, is supported by the Debtor's reasonable business judgment.

34.    The first and second *Iridium* factors are satisfied. The Stipulation avoids the need for litigation of the agreed-upon issue that the HHH Acquisition Reimbursements belong to HHH Acquisition and therefore are not property of the Debtor's estate. The Parties have avoided significant expense, inconvenience and delay in connection with their effort to resolve any claims and disputes between them with respect to the HHH Acquisition Reimbursements, and further delay in resolving these issues would lead only to further expense on the behalf of the Debtor to the detriment of the Debtor's estate and creditors.

35.    The third and fourth *Iridium* factors are satisfied. The Stipulation is in the interest of the creditors of the estate, since by reaching an agreement as to certain of the Debtor's and HHH Acquisition's rights and obligations under the Asset Purchase Agreement post-bankruptcy, the Debtor is relieved of the burden of expending resources in resolving the settled issues as

pertains to the Asset Purchase Agreement.  Further, Debtor is not aware of any parties in interest who object to the Stipulation.

36.     The fifth *Iridium* factor is satisfied, because both Parties are represented by experienced and knowledgeable counsel, and this Court has considerable expertise in reviewing and approving stipulations of this kind.

37.     The sixth *Iridium* factor is satisfied, because the Stipulation merely clarifies certain of the rights and obligations between Debtor and HHH Acquisition under the terms of the Asset Purchase Agreement, which sets forth the post-closing liability for any claims, demands, debts, obligations, damages, losses, or liabilities arising from or related to that agreement.

38.     Finally, the seventh and last *Iridium* factor is satisfied, because the Stipulation is the culmination of efficient and effective arm's length bargaining between the Debtor and HHH Acquisition.

39.     Consideration of the foregoing factors evidences that the Stipulation is fair and reasonable, and in the best interests of the Debtor's estate and its creditors.  Accordingly, the Debtor respectfully submits that the Stipulation should be approved and entered by the Court.

## Summary of Salient Terms of the Stipulation

40.     As noted above, the Stipulation provides and clarifies certain rights and obligations of the Parties derived from the Asset Purchase Agreement.

41.     The Stipulation also clarifies Debtor's and HHH Acquisition's agreement that HHH Acquisition Reimbursements related to services rendered after April 30, 2015 belong to HHH Acquisition and are not property of Debtor's bankruptcy estate in accordance with 11 U.S.C. § 541(b).

4861710_2

42.    The Debtor and HHH Acquisition submit that the Stipulation will assist the administration of this Chapter 11 proceeding and provide all parties in interest with notice and knowledge of what is not estate property.

43.    The Stipulation also establishes a streamlined procedure for disbursing to HHH Acquisition any future HHH Acquisition Reimbursements received by Debtor to HHH Acquisition (i) requiring Debtor to make arrangements for the **Medicare** and *Medicaid* funds deposited in the Debtor's Account for services rendered by HHH Acquisition after the Closing Date to be automatically transferred by wire to an account designated by HHH Acquisition every ten (10) business days, until such time as the pending assignment of the Facility's *Medicaid* provider number is made to HHH Acquisition.

44.    The Stipulation also establishes a framework for Debtor to provide an accounting of all **Medicare** and *Medicaid* payments arising from HHH Acquisition's ownership and operation of the Facility after the Closing Date, together with all statements and documentation related thereto.

**WHEREFORE**, based on the foregoing, Debtor and respectfully request that this Court enter an Order on the Motion that approves the Stipulation.

4861710_2

Dated: February 4, 2016

Respectfully submitted,

HARTER SECREST & EMERY LLP

By: s/ *Raymond L. Fink*
   Raymond L. Fink
   John Mueller
   12 Fountain Plaza, Suite 400
   Buffalo, NY 14202
   Telephone: 716.853.1616
   Fax : 716.853.1617
   Email: rfink@hselaw.com
   jmueller@hselaw.com

*Attorneys for Debtor*
*Hebrew Hospital Home of Westchester, Inc.*

4861710_2