| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date:  March 16, 2016<br>Hearing Time:  10:00 a.m. |

------------------------------------------------------- x
                                                        :   Chapter 11
In re                                                   :
                                                        :   Case No. 15-11158 -MEW
HHH CHOICES HEALTH PLAN, LLC,                           :   Case No. 15-13264
                                                        :   Case No. 16-10028
                    Debtor.                             :
                                                        :   (Jointly Administered)
------------------------------------------------------- x

PLEASE TAKE NOTICE that upon this Notice of Motion and the accompanying memorandum of law and the declaration of Greg M. Zipes, William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), will move this Court before the Honorable Michael E. Wiles, Bankruptcy Judge, in the United States Bankruptcy Court, One Bowling Green, New York, New York 10004 **on March 16, 2016 at 10:00 a.m.**, or as soon thereafter as counsel can be heard, for an order appointing a Chapter 11 trustee in the case of **Hebrew Hospital Home of Westchester, Inc., Case No. 16-10028 (MEW)** and for such other and further relief as this Court may deem just and proper.  The original application is on file with the Clerk of the Bankruptcy Court.

PLEASE TAKE FURTHER NOTICE that any responsive papers should be filed with the Court and personally served on the United States Trustee, at 201 Varick Street, Room 1006, New York, New York 10014, to the attention of Greg M. Zipes, Esq., no later than three (3) days prior to

the return date set forth above. Such papers shall conform to the Federal Rules of Civil Procedure and identify the party on whose behalf the papers are submitted, the nature of the response, and the basis for such response.

Dated: New York, New York
February 16, 2016

                          WILLIAM K. HARRINGTON
                          UNITED STATES TRUSTEE

By: /s/ *Greg M. Zipes*
Greg M. Zipes
Trial Attorney
201 Varick Street, Room 1006
New York, New York 10014
Tel. No. (212) 510-0500
Fax. No. (212) 668-2255

To:

Hebrew Hospital Home of Westchester, Inc.
55 Grasslands Road
Valhalla, NY 10595

Raymond L. Fink, Esq.
Harter Secrest & Emery LLP
12 Fountain Plaza
Suite 400
Buffalo, NY 14202

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
: Chapter 11
In re :
: Case No. 15-11158 -MEW
HHH CHOICES HEALTH PLAN, LLC, : Case No. 15-13264
: Case No. 16-10028
Debtor. :
: (Jointly Administered)
------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES TRUSTEE'S MOTION IN THE CASE OF HEBREW HOSPITAL HOME OF WESTCHESTER, INC. FOR ORDER DIRECTING APPOINTMENT OF A CHAPTER 11 TRUSTEE**

TO:  THE HONORABLE MICHAEL E. WILES,
     UNITED STATES BANKRUPTCY JUDGE:

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), in furtherance of his duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5), hereby respectfully files his motion for the appointment of a Chapter 11 trustee in the case of Hebrew Hospital Home of Westchester, Inc. (the "Debtor" or "HHHW") (the "Motion").[1] In support thereof, the United States Trustee represents and alleges as follows:

## I. INTRODUCTION

The appointment of a Chapter 11 trustee is amply justified as in the best interests of creditors. HHHW is controlled by managers who not only have conflicts of interest, but have repeatedly failed to heed the corporate and financial distinctions between the three related debtors. HHHW is not operating but has assets. HHHW's assets are being used to cover shortfalls with the operating debtor without any regard to the rights of HHHW's creditors. HHHW needs its own fiduciary to protect its own creditors. For these reasons,

---

[1] This is one of three jointly administered cases. The other two cases are: HHH Choices Health Plan, LLC, Case No. 15-11158 (MEW) ("HHH Choices") and Hebrew Hospital Senior Housing, Inc., Case No. 15-13264 (MEW) ("Meadows", with all of the debtors, the "Debtors"). Because HHHW is a not-for-profit, the United States Trustee does not seek to convert this case to one under Chapter 7 of the Bankruptcy Code.

cause exists for the appointment of a Chapter 11 trustee, and such an appointment is in the best interest of creditors, under Bankruptcy Code sections 1104(a)(2).

## II. BACKGROUND

### A. General Background

1. Unless otherwise stated, the facts from this **Section A** are supported by the declarations attached to the motion filed by the United States Trustee to appoint a Chapter 11 trustee in the Meadows case (the "Meadows Motion"). Dkt. No. 67. The Meadows Motion was filed on January 11, 2016 and is returnable on February 25, 2016.

2. As stated in the Meadows Motion, Mary Frances Barrett is president of the Debtors. Likewise, the law firm of Harter Secrest & Emery LLP is counsel for all three debtors. See also Dkt. No. 35 (Declaration of Raymond L. Fink, Esq. at ¶ 11). Getzler Henrich & Associates LLC is the financial advisor for all three debtors. See also Dkt. 12 in case 15-13264 (Declaration of Daniel S. Polsky at ¶ 8(c)).

3. Ms. Barrett has served as CEO of Meadows since its inception in 1997, HHH Choices since its inception in 2006, and HHHW since its inception in 1993.

4. The United States Trustee has appointed separate committees of creditors in the HHH Choices and Meadows cases. The United States Trustee has not yet appointed a committee in the HHHW case.

5. Of the three Debtors, only one is an operating entity. Meadows operates a continuing care retirement community (the "CCRC") commonly known as Westchester Meadows. The CCRC consists of 120 independent living units, ten enriched housing units,

2

and 20 beds in a skilled nursing facility.    HHHW is not an operating entity.    See Zipes Dec. Ex. A ¶ 16.

### B.    HHHW's Assets and Liabilities

6.    Prior to the bankruptcy, HHHW sold substantially all of its assets and operations to a third party HHH Acquisition LLC ("HHH Acquisition") on April 30, 2015 (the "HHH Sale"), receiving net proceeds of $10,251,965.96 from the HHH Sale (the "Sale Proceeds").    See Zipes. Dec. Ex. A at ¶¶ 8, 9.

7.    HHHW filed for Chapter 11 bankruptcy relief of January 8, 2016 (the "HHHW Petition Date").    In its Local Rule 1007 affidavit, HHHW stated that it had assets of approximately $15,223,536.78 as of the HHHW Petition Date.    Id. at ¶ 27.

8.    On February 9, 2016, HHHW filed its schedules of assets and liabilities (the "HHHW Schedules") and statement of financial affairs.    In the HHHW Schedules, HHH listed total assets of $13,581,357.59 and total liabilities of $28,654,720.43.    See Zipes Decl. Ex. B (summary of schedules).    The Debtor listed all of its liabilities as unsecured. Id.

9.    Among the assets of HHHW is a receivable styled as a "Loan from sale proceeds to affiliate, Hebrew Hospital Senior Housing, Inc. – Restructuring Support and Loan Agreement dated October 20, 2015" in the amount of $3,532,171. Id. (Schedules A/B, Question 71).

10.    Among the debts is a debt owed to 1199 SEIU Funds in the amount of $23,516,694.00.    HHHW listed this debt as contingent and unliquidated, but not disputed. See Zipes Decl. Ex. B (Schedule F).

### C. Relevant Motions Filed in the HHHW Case

11. On January 8, 2016, Meadows and HHHW jointly filed a motion for Interim and Final Orders Pursuant to Sections 105, 361, 363, 364, 503, and 507 of Bankruptcy Code (I) Authorizing Debtor to (A) Obtain Post-Petition Financing and (B) Use Cash Collateral, (II) Granting Liens and Superpriority Claims, (III) Modifying the Automatic Stay, and (IV) Scheduling Final Hearing Pursuant to Fed. R. Bankr. P. 4001(b) and (c) (the "DIP Motion") (Dkt. No. 75, HHHW Dkt. No. 8). Attached to the DIP Motion was a proposed DIP financing agreement (the "DIP Agreement"). See Zipes Decl. at ¶ 3.

12. The Debtor's president and law firm appeared to be on both sides of the transaction (representing both the Debtor and the Lender) according to the DIP Motion and the DIP Motion and the DIP Agreement. See Zipes Decl. Ex. C.

13. At the creditors' meeting held pursuant to Bankruptcy Code 341(a) on January 20, 2016 (the "Creditors' Meeting"), the Debtors' principals demonstrated little knowledge of the terms of the DIP Motion. Ms. Barrett stated the following under questioning:

```
9    MR. ZIPES: Okay. Who negotiated -- do you know the
10   person who actually negotiated this document?
11   MS. BARRETT: With Lapis?
12   MR. ZIPES: No, now we're focusing on HHHW, the DIP-
13   financing motion that's currently before the court.
14   MS. BARRETT: I believe, Mr. Fink.
15   MR. ZIPES: Were you involved with the negotiations?
16   MS. BARRETT: No.
17   MR. ZIPES: Okay.
18   MS. BARRETT: Mr. Fink and Mr. Pol -- Pol – Polsky [the retained financial
```
advisor].

Tr. at 40.

4

14. Similarly, the CFO of the Debtors demonstrated little knowledge of the DIP Agreement.

```
4    MR. ZIPES: Okay. Are you familiar with this
5    agreement that – this unsigned agreement between HHHW and the
6    debtor for financing?
7    MR. CUTAIA: For a loan?
8    MR. ZIPES: Yeah.
9    MR. CUTAIA: Yes.
10   MR. ZIPES: Were you involved with the negotiations
11   of this –
12   MR. CUTAIA: No.
13   MR. ZIPES: -- in any way?
14   MR. CUTAIA: No.
15   MR. ZIPES: Do you know who was?
16   MR. CUTAIA: Dan Polsky and counsel.
```

Tr. at 78.  See Zipes Decl. Ex. D (transcript excerpts).

15. The United States Trustee has been informed that Meadows has sufficient funds for operations through the end of March 2016, and therefore the final hearing on the DIP Motion is likely to be further adjourned.  See Zipes Decl. at ¶ 5.

16. Most recently, the Debtor filed a motion approving ordinary course payments of Medicare/Medicaid reimbursement Funds to HHH Acquisition (the "Payment Motion").  Dkt. No. 108.  Of note, the HHHW stated that it transferred $300,000.00 to HHH Acquisition on January 15, 2016 and $82,422.74 on January 19, 2016, both "in the ordinary course" of business and both after the HHHW Petition Date.  See Zipes Decl. Ex. E at ¶¶ 18, 19.  HHHW seeks approval of these payments and also authority to pay additional sums under the terms of a purchase agreement, pursuant to which HHHW sold its assets to HHH Acquisition. Id. at ¶ 43.  That motion is scheduled for February 25, 2016.  See Zipes Decl. at ¶ 6.

5

**D.    Complaints of HHHW Creditors**

17.    Creditors of HHHW have complained about the lack of a fiduciary to protect their interests.   For example, in a letter to the United States Trustee dated February 10, 2016, a creditor stated that a creditors' committee is necessary in part because "the fact that HHHW transferred $384,422.74 without a thought of seeking Court approval, but then *subsequently* determined that Court approval was required for the next $200,000 of contemplated transfers of the same kinds of monies is disturbing." (emphasis in original.) (the "Halperin Letter").   See Zipes Decl. Ex. F.

### III.    DISCUSSION

**A.    The Appointment of a Trustee is Required Where it is
in the Best Interest of Creditors**

11 U.S.C. § 1104(a) provides:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor. . . .
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor [ ].

11 U.S.C. § 1104(a)(1), (a)(2).

The United States Trustee is moving under section 1104(a)(2) of the Bankruptcy Code, which allows appointment of a trustee even when no "cause" exists.   See In re Sharon Steel Corp., 871 F.2d 1217, 1226 (3d Cir. 1989);   In re Ionosphere Clubs, Inc., 113 B.R. 164, 168 (Bankr. S.D.N.Y. 1990).   Under § 1104(a)(2), the Court may appoint a trustee, in its discretion, to address the "interests of the creditors, any equity security holders, and other interests of the estate." 11 U.S.C. § 1104(a)(2).   See, e.g., Sharon Steel, 871 F.2d at 1226; Comm. of Dalkon Shield Claimants v. A.H. Robins Co., 828 F. 2d 239, 242 (4th Cir. 1987).

Under section 1104(a)(2), courts look to the practical realities and necessities.   In re Adelphia Comm's Corp., 336 B.R. 610, 658 (Bankr. S.D.N.Y. 2006), aff'd, 342 B.R. 122 (S.D.N.Y. 2006); In re Euro-American Lodging Corp., 365 B.R. 421, 427 (Bankr. S.D.N.Y. 2007).   Accordingly, the standard for appointment of a Chapter 11 trustee under section 1104(a)(2) is flexible.   Adelphia; 336 B.R. at 658; In re The 1031 Tax Group, LLC, 374 B.R. 78, 90-91 (Bankr. S.D.N.Y. 2007).   Among the factors considered by the courts in assessing motions brought under this section include (1) the trustworthiness of the debtor, (2) the debtor's past and present performance and prospects for rehabilitation, (3) the confidence - or lack thereof - of the business community and of creditors in present management, and (4) the benefits derived from the appointment of a trustee, balanced against the cost of the appointment.   Adelphia; 336 B.R. at 658; Euro-American, 365 B.R. at 427; 1031 Tax Group, 374 B.R. at 91.

**B.    The Appointment of a Chapter 11 Trustee is
        in the Best Interests of Creditors Under Section 1104(a)(2)**

Here, "§1104(a)(2) reflects the practical reality that a trustee is needed."   Adelphia, 336 at 658; Euro-American, 365 B.R. at 428; The 1031 Tax Group, 374 B.R. at 91.   The same reasons comprising cause for the appointment of a Chapter 11 trustee under section 1104(a)(1),

7

coupled with more reasons, make it in the best interest of creditors that a Chapter 11 trustee be appointed. Of the relevant factors at issue, the untrustworthiness and the lack of confidence in the Debtors weigh most heavily under section 1104(a)(2). Euro-American, 365 B.R. at 427.

Here, a trustee is necessary for the following reasons:

(a) HHHW has at least two important pending motions which involve transfers of HHHW funds to a sister company (the DIP Motion) or to a third party (the Payment Motion). These motions seek payments that can deplete the HHHW estate, and there is no fiduciary protecting HHHW's creditors. HHHW creditors have complained about this. See Zipes Decl. Ex. F (Halperin Letter). A creditors' committee in the HHHW case does not solve this problem of conflicted management. As it stands, the same parties are on both sides of the transaction in connection with the DIP Motion. See Zipes Decl. Ex. D.

(b) HHHW management seems disengaged from major decisions involving HHHW, as demonstrated by the testimony at the creditors' meeting and by management's delegation of duties to the financial advisor. See Zipes Decl. Ex. D (transcript excerpts).

(c) HHHW has filed Schedules showing a major debt as undisputed, the debt owed to 1199 SEIU Funds in the amount of $23,516,694.00. See Zipes Decl. Ex. B (Schedule F). It is unknown if that debt is undisputed, but a third party fiduciary should review this matter. If this debt is reduced or eliminated, this estate may actually be solvent.

(d) Among the assets is a receivable styled as a "Loan from sale proceeds to affiliate, Hebrew Hospital Senior Housing, Inc. – Restructuring Support and Loan Agreement dated October 20, 2015" in the amount of $3,532,171. See Zipes Decl. Ex. B. (Schedules A/B, Question 71). Again, management approved this transfer from HHHW to shore up the finances

8

of another debtor. A third party should review the process by which this transfer was made, from the perspective of maximizing the value of the HHHW estate.

In summary, HHHW's management is ill-equipped to review transfers to third parties for possible avoidance and recovery. HHHW's president, who has been in place since 1993, is conflicted and oversaw these transfers. Management cannot be trusted to act in the best interests of the HHHW estate and its creditors.

A Chapter 11 trustee is needed to perform the duties of a debtor-in possession, including selling assets, ascertaining how the significant debts were incurred, and reviewing payments to insiders and professionals. As of this date, HHHW has had an unfortunate track record with its pre- and post-petition actions. An experienced Chapter 11 trustee, in contrast, will stabilize this case and retain competent counsel to steer it to completion. In sum, appointing an independent, dispassionate Chapter 11 trustee under the circumstances herein is essential.

## IV.   CONCLUSION

**WHEREFORE,** the United States Trustee respectfully requests that this Court enter an order (a) directing the appointment of a Chapter 11 trustee; and (b) granting such other relief as the Court deems just, fair, and equitable.

Dated: New York, New York
       February 16, 2016                  Respectfully submitted,

                                          WILLIAM K. HARRINGTON
                                          UNITED STATES TRUSTEE

                                  **By:**   */s/ Greg M. Zipes*
                                          Trial Attorney
                                          201 Varick Street, Room 1006
                                          New York, New York 10014
                                          Tel. (212) 510-0500; Fax (212) 668-2255

10