**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE:

HHH CHOICES HEALTH PLAN, LLC, *ET AL.*

CHAPTER 11

CASE NO. 15-11158-MEW
CASE NO. 15-13264-MEW
CASE NO. 16-10028-MEW

DEBTORS.

(JOINTLY ADMINISTERED)

# AMENDED CHAPTER 11 PLAN OF LIQUIDATION FOR
## *HEBREW HOSPITAL SENIOR HOUSING INC.* PROPOSED BY THE DEBTOR

**LIPPES MATHIAS WEXLER FRIEDMAN, LLP**
Raymond L. Fink, Esq.
John A. Mueller, Esq.
50 Fountain Plaza, Suite 1700
Buffalo, NY 14202-2216
Tel: (716) 853-5100
Fax: (716) 853-5199
rfink@lippes.com
jmueller@lippes.com

· *Counsel to Hebrew Hospital Senior Housing, Inc.*

Dated: June 8, 2018

i

# TABLE OF CONTENTS

**CHAPTER 11 PLAN OF LIQUIDATION FOR *HEBREW HOSPITAL SENIOR HOUSING INC.* PROPOSED BY THE DEBTOR** ........................................................................................ i

I. Introduction ........................................................................................................ 1

II. Defined Terms & Other References ..................................................................... 1

    2.1   Defined Terms ............................................................................................. 1

    2.2   Undefined Terms ......................................................................................... 6

    2.3   Interpretation .............................................................................................. 6

    2.4   Rules of Construction .................................................................................. 6

    2.5   Computation of Time .................................................................................. 7

    2.6   Governing Law ............................................................................................ 7

    2.7   Reference to Monetary Figures ................................................................... 7

III. Administrative & Priority Claims ....................................................................... 7

    3.1   Administrative Claims ................................................................................. 7

    3.2   Professional Claims .................................................................................... 7

    3.3   Priority Tax Claims ..................................................................................... 8

IV. Classification & Treatment of Claims ................................................................. 8

    4.1   Classification Summary .............................................................................. 8

    4.2   Treatment of Classes of Claims .................................................................. 9

    4.3   Special Provision Governing Unimpaired Claims ...................................... 10

V. Means for Implementation ................................................................................. 11

    5.1   Implementation of the Plan ....................................................................... 11

    5.2   Plan Funding .............................................................................................. 11

    5.3   Vesting of Assets in the Debtor ................................................................. 11

    5.4   Continuing Existence ................................................................................. 11

    5.5   Liquidation of Remaining Assets .............................................................. 11

    5.6   Management of Debtor ............................................................................... 12

    5.7   Powers & Obligations of the Plan Administrator ....................................... 12

    5.8   Plan Administrator's Bond ......................................................................... 14

    5.9   Post-Effective Date Committee .................................................................. 14

    5.10   Rights of Action ....................................................................................... 15

    5.11   Corporate Action ..................................................................................... 17

    5.12   Cancellation of Existing Instruments & Agreements ............................... 17

    5.13   Setoffs ...................................................................................................... 17

5.14     Funding of the Disputed Claims Reserve ............................................................... 18

5.15     Plan Distributions ............................................................................................... 18

5.16     Cash Distributions .............................................................................................. 19

5.17     Delivery of Plan Distributions ............................................................................. 19

5.18     Distributions to Holders as of the Confirmation Date ........................................... 20

5.19     Abandoned Assets .............................................................................................. 20

5.20     Windup .............................................................................................................. 20

5.21     Disposition of Unclaimed Funds ......................................................................... 20

5.22     Indefeasibility of Distributions ........................................................................... 20

5.23     Distribution of Unclaimed Property ..................................................................... 20

5.24     Saturday, Sunday, or Legal Holiday .................................................................... 21

5.25     Final Order ......................................................................................................... 21

VI. Acceptance or Rejection of Plan ................................................................................ 21

6.1     Eligibility to Vote .............................................................................................. 21

6.2     Votes Required for Acceptance ........................................................................... 21

6.3     Cramdown ......................................................................................................... 21

VII. Treatment of Executory Contracts ........................................................................... 22

7.1     Assumption or Rejection of Executory Contracts .................................................. 22

7.2     Approval of Assumption or Rejection of Executory Contracts ................................ 22

7.3     Rejection Damages Claims .................................................................................. 22

7.4     Compensation & Benefit Programs ...................................................................... 22

VIII. Provisions for Resolving & Treating Claims ........................................................... 23

8.1     Prosecution of Disputed Claims .......................................................................... 23

8.2     Settlement of Disputed Claims ............................................................................ 23

8.3     No Distributions Pending Allowance ................................................................... 24

IX. Conditions to Confirmation & Effective Date ............................................................ 24

9.1     Conditions to Confirmation ................................................................................ 24

9.2     Conditions to Effective Date ............................................................................... 24

X. Modification, Revocation or Withdrawal of Plan ........................................................ 25

10.1     Modification ....................................................................................................... 25

10.2     Revocation or Withdrawal ................................................................................... 25

XI. Injunctions, Exculpation & Indemnification ............................................................. 25

11.1     Injunction .......................................................................................................... 25

11.2     Exculpation ........................................................................................................ 26

11.3 Indemnification ................................................................................................ 26

11.4 Preservation of Insurance ................................................................................ 27

11.5 Release of Liens ............................................................................................... 27

XII. Retention of Jurisdiction ............................................................................................ 27

XIII. Miscellaneous Provisions .......................................................................................... 27

13.1 Governing Law ................................................................................................. 27

13.2 Additional Documents ...................................................................................... 28

13.3 Reservation of Rights ....................................................................................... 28

13.4 Preservation of Insurance ................................................................................ 28

13.5 Elimination of Vacant Classes ......................................................................... 28

13.6 Successors and Assigns ..................................................................................... 28

13.7 Substantial Consummation .............................................................................. 28

13.8 No Tax Advice .................................................................................................. 29

13.9 Entire Agreement ............................................................................................. 29

13.10 Plan Exhibits .................................................................................................... 29

13.11 Severability ....................................................................................................... 29

13.12 Section 1125(e) Good Faith Compliance ......................................................... 29

13.13 Section 1146(a) Exemption ............................................................................... 30

13.14 Notices .............................................................................................................. 30

(i) Notices to the Debtor ....................................................................................... 30

(ii) Notices to the Plan Administrator ................................................................... 30

(iii) Notices to the Professionals ............................................................................. 30

## I. Introduction

Hebrew Hospital Senior Housing, Inc. ("Debtor" or "HHSH"), proposes the following Chapter 11 Plan of Reorganization pursuant to Section 1121(a) of title 11 of the United States Code. Reference is made to the Disclosure Statement for a discussion of the Debtor's history, business, operations, projections, risk factors, a summary and analysis of this Plan and certain related matters.

## II. Defined Terms & Other References

### 2.1    Defined Terms

The following terms used herein shall have the respective meanings defined below and may be used in both the singular and plural as appropriate to the context:

1.    ***Administrative Claim*** means a Claim for costs and expenses of administration of the Chapter 11 Case pursuant to sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estate and operating the business of the Debtor; (b) Allowed Professional Claims; and (c) all fees and charges assessed against the Estates pursuant to Section 1930 of Chapter 123 of Title 28 of the United States Code, including, without limitation, all Trustee Fee Claims.

2.    ***Administrative Claims Bar Date*** means the deadline for filing Administrative Claims contained in the Confirmation Order.

3.    ***Allowed*** means, as to a Claim or an Interest, a Claim or Interest or any portion thereof, specifically allowed under the Plan, the Bankruptcy Code, or by a Final Order.

4.    ***Avoidance Actions*** means all avoidance, recovery, subordination, or other claims, actions, or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under Sections 502, 510, 542, 544, 545, and 547 through and including Section 553 of the Bankruptcy Code, regardless of whether or not such actions have been commenced prior to the Effective Date.

5.    ***Ballot*** means each of the ballots distributed to each holder of an Impaired Claim that is entitled to vote to accept or reject the Plan and on which such holder is to indicate, among other things, acceptance or rejection of the Plan.

6.    ***Bankruptcy Code*** means Title 11 of the United States Code, as now in effect or hereafter amended.

7.    ***Bankruptcy Court*** means the United States Bankruptcy Court for the Southern District of New York having jurisdiction over the Chapter 11 Case.

8.    ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United

States Code, and the Local Rules of the Bankruptcy Court, as amended from time to time and applicable to the Chapter 11 Case.

9.  ***Business Day*** means day, other than a Saturday, Sunday, or a legal holiday, as defined in Bankruptcy Rule 9006(a).

10.  ***Cash*** means cash and cash equivalents, in United States Dollars, including, but not limited to, bank deposits, checks payable to the Debtor and similar items.

11.  ***Causes of Action*** means all claims, actions, causes of action, choses in action, suits, debts, damages, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, judgments, remedies, rights of set-off, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and cross-claims (including all claims and any avoidance, recovery, subordination, or other actions against Insiders and/or any other Entities under the Bankruptcy Code, including Avoidance Actions) of the Debtor, the debtor in possession, and/or the Estate, whether known or unknown, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, that are or may be pending on the Effective Date or commenced by the Reorganized Company after the Effective Date against any Entity, based in law or equity, including under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the date of entry of the Confirmation Order.

12.  ***Chapter 11 Case*** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and originally assigned case number 15-13264-MEW, and being jointly administered in the Bankruptcy Court under case number 15-11158-MEW.

13.  ***Claim*** has the meaning set forth in Section 101(5) of the Bankruptcy Code.

14.  ***Claimant*** means the holder of a Claim as defined by Section 101(5) of the Bankruptcy Code.

15.  ***Claims Bar Date*** means July 29, 2016, the deadline set by the Bankruptcy Court, pursuant to Bankruptcy Rule 3003(c)(3), for the filing of any Proofs of Claim against the Debtor's estate in this Chapter 11 Case.

16.  ***Claims Objection Deadline*** means the deadline set by the Bankruptcy Court, pursuant to Bankruptcy Rule 3007, for objections to the allowance of any Claims against the Debtor's estate in this Chapter 11 Case.

17.  ***Claims Register*** means the official register of Claims against or Interests in the Debtor maintained by the Bankruptcy Court.

18.  ***Class*** means a category of holders of Claims or Interests under Section 1122(a) of the Bankruptcy Code.

19.     ***Committee*** means the statutory committee of unsecured creditors appointed in the Chapter 11 Case on or about December 28, 2015, with members: (i) 1199 SEIU Benefit and Pension Funds; (ii) Andrea Taber, Esq., on behalf of Lucille and Selig Poplik; (iii) Richard A. Bobbe; (iv) Mary Blumenthal-Lane, on behalf of Julia Blumenthal-Lane; and (v) Peter Clark, on behalf of Ann Clark.

20.     ***Confirmation*** means the entry of the Confirmation Order on the docket of the Chapter 11 Case.

21.     ***Confirmation Date*** means the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

22.     ***Confirmation Hearing*** means the hearing(s) before the Bankruptcy Court under Section 1128 of the Bankruptcy Code at which the Debtor seeks entry of the Confirmation Order.

23.     ***Confirmation Order*** means the order of the Bankruptcy Court confirming the Plan under Section 1129 of the Bankruptcy Code and approving the Disclosure Statement.

24.     ***Consummation*** means the occurrence of the Effective Date.

25.     ***Creditor*** has the meaning set forth in Section 101(10) of the Bankruptcy Code.

26.     ***D&O Litigation*** means the adversary proceeding filed by the Committee on December 8, 2017 [Docket No. 753], and assigned Adversary Proceeding No. 17-01240-mew.

27.     ***Debtor*** means Hebrew Hospital Senior Housing, Inc., a New York not-for-profit corporation and the debtor in this Chapter 11 Case.

28.     ***Disclosure Statement*** means the disclosure statement for the Plan as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto, to be approved by the Confirmation Order.

29.     ***Disputed*** means, as to a Claim or Interest, or any portion thereof, that: (i) is not Allowed; (ii) is not disallowed under the Plan, the Bankruptcy Code, or a Final Order; (iii) is the subject of an objection or request for estimation filed in the Bankruptcy Court and which objection or request for estimation has not been withdrawn or overruled by a Final Order of the Bankruptcy Court; or (iv) is otherwise disputed by the Debtor in accordance with applicable law, which dispute has not been withdrawn, resolved or overruled by Final Order.

30.     ***Disputed Claims Reserve*** means the reserve to be established and maintained by the Plan Administrator described in Section 5.14 of the Plan.

31.     ***Effective Date*** means such date designated by the Debtor no later than the first Business Day of the month following the month in which the several conditions to the effectiveness of this Plan specified herein have been satisfied or waived.  In no event, shall the Effective Date be more than thirty (30) days after the date the Confirmation Order becomes a Final Order, unless extended by Order of the Bankruptcy Court.

32.     ***Entity*** has the meaning set forth in Section 101(15) of the Bankruptcy Code.

33.     ***Estate*** means the bankruptcy estate of the Debtor created under Sections 301 and 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Case.

34.     ***Executory Contract*** means contract or lease to which the Debtor is a party that is subject to assumption or rejection under Section 365 of the Bankruptcy Code.

35.     ***Final Decree*** means the decree contemplated under Bankruptcy Rule 3022.

36.     ***Final Order*** means an order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court on the docket in the Chapter 11 Case that is: (i) no longer subject to review, reversal, modification, or amendment by appeal or writ of certiorari, under applicable Bankruptcy Rules or statutes; and (ii) not subject to any stay or injunction against its effectiveness or enforcement.

37.     ***Former Resident Litigation*** means the adversary proceedings filed by the Debtor on December 7-8, 2017 [Docket Nos. 743-748, 750 and 752], and assigned Adversary Proceeding Nos. 17-01229-mew through 17-01235-mew, and 17-01238-mew.

38.     ***General Unsecured Claim*** means any Claim other than an Administrative Claim, Professional Claim, Priority Tax Claim, Secured Claim or Other Priority Claim.

39.     ***Governmental Unit*** has the meaning set forth in Section 101(27) of the Bankruptcy Code.

40.     ***Holder*** means the Person who has the legal right to enforce a negotiable instrument.

41.     ***Impaired*** means, with respect to any Class of Claims or Interests, a Claim or an Interest that is not Unimpaired.

42.     ***Insider*** has the meaning set forth in Section 101(31) of the Bankruptcy Code.

43.     ***Internal Revenue Code*** means Title 26 of the United Stated Code, as now in effect or hereafter amended.

44.     ***IRS*** means the Internal Revenue Service.

45.     ***Lien*** has the meaning set forth in Section 101(37) of the Bankruptcy Code.

46.     ***Local Rules*** means the *United States Bankruptcy Court Southern District of New York Local Rules of Bankruptcy Procedure* currently effective December 1, 2017.

47.     ***Net Proceeds*** means the Remaining Cash together with the aggregate Cash received after the Effective Date from the liquidation of the Assets or otherwise, minus Cash necessary to fund Allowed Administrative/Priority and Secured Claims, the costs to administer

1332543v.1

the Plan (including the costs and expenses of the Plan Administrator, the Post-Effective Date Committee and their respective professionals), and the Disputed Claims Reserve.

48. ***Other Priority Claim*** means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in payment as specified in Sections 507(a)(2), (3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

49. ***Person*** has the meaning set forth in Section 101(41) of the Bankruptcy Code.

50. ***Petition Date*** means December 9, 2015, the date of the filing by the Debtor of its petition for relief under Chapter 11 of the Bankruptcy Code.

51. ***Plan*** means this chapter 11 plan, as it may be altered, amended, modified or supplemented from time to time, and all exhibits, supplements, appendices and schedules.

52. ***Plan Administrator*** means such Person as may be designated by the Debtor, and approved by the Bankruptcy Court pursuant to the Confirmation Order, or after the Effective Date, such other person designated pursuant to Section 5.1 of the Plan, to administer the Plan. The proposed Plan Administrator shall be identified prior to the Confirmation Hearing.

53. ***Post-Effective Date Committee*** means the Committee as it shall function after the Effective Date as more fully described in Section 5.9 of the Plan.

54. ***Priority Tax Claim*** means any Claim of a Governmental Unit of the specified in Section 507(a)(8) of the Bankruptcy Code. Priority Tax Claims shall include only such Claims for penalties that are related to a Claim specified in Section 507(a)(8) of the Bankruptcy Code and that seek compensation for actual pecuniary loss.

55. ***Professional*** means an Entity employed in the Chapter 11 Case in accordance with Sections 327 and 1123 of the Bankruptcy Code or otherwise, pursuant to a Final Order of the Bankruptcy Court.

56. ***Professional Fee Claim*** means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under Sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

57. ***Professional Fee Claims Bar Date*** means 4:00 p.m. (prevailing Eastern Time) on the date that is sixty (60) days after the Effective Date

58. ***Proof of Claim*** means a proof of Claim filed against the Debtor in the Chapter 11 Case (conforming substantially to Official Bankruptcy Form No. 10), together with accompanying documentation.

59. ***Remaining Cash*** means all Cash held by or for the benefit of the Estate upon the Effective Date.

60. ***Schedules*** means the Schedules of Assets and Liabilities, the Schedules of Executory Contracts and Unexpired Leases and the Statement of Financial Affairs filed by the Debtor pursuant to Section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules, as such statements and schedules have been or may be supplemented or amended through the Confirmation Date.

61. ***Trustee Fees*** means all fees payable pursuant to 28 U.S.C. § 1930.

62. ***Trustee Fee Claim*** means a Claim of the Office of the United States Trustee for the payment of Trustee Fees.

63. ***Unimpaired*** means a Class of Claims or Interests that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

## 2.2 Undefined Terms

A term used in this Plan that is not defined in this Plan shall have the meaning assigned to that term in the Bankruptcy Code or in the Disclosure Statement.

## 2.3 Interpretation

For purposes of the Plan, the following rules of interpretation apply: (i) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter gender; (ii) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (iii) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, shall mean such document, schedule, or exhibit, as it may have been or may be amended, modified, or supplemented; (iv) the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to any particular portion of the Plan; (v) captions and headings are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (vi) unless otherwise specified herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (vii) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

## 2.4 Rules of Construction

The rule of "contra proferentum" does not apply to the interpretation of the Plan. The Plan is the product of extensive negotiations between and among the interested parties. Each of whom, including the Debtor and Committee, was represented by independent counsel of their choice who either: (i) participated in the formulation and documentation of; or (ii) was afforded the opportunity to review and provide comments on, the Plan, the Disclosure Statement, and the documents ancillary thereto. Accordingly, unless explicitly stated otherwise, the general rule of

contract construction known as "contra proferentum" shall not apply to the construction or interpretation of any provision of this Plan, the Disclosure Statement, or any exhibit, schedule, contract, instrument, release, or other document generated in connection therewith as concerns such parties identified above.

**2.5    Computation of Time**

Bankruptcy Rule 9006(a) applies in computing any period of time prescribed or allowed herein.

**2.6    Governing Law**

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict-of-laws principles.

**2.7    Reference to Monetary Figures**

All references in the Plan to monetary figures refer to currency of the United States of America, unless otherwise expressly provided.

### III. ADMINISTRATIVE & PRIORITY CLAIMS

**3.1    Administrative Claims**

Unless otherwise agreed to by the holder of an Allowed Administrative Claim and the Debtor or Plan Administrator, as applicable, each holder of an Allowed Administrative Claim (other than holders of Professional Claims and Claims for fees and expenses pursuant to 28 U.S.C. § 1930) will receive in full and final satisfaction of its Administrative Claim an amount of Cash equal to the amount of such Allowed Administrative Claim within ninety (90) days of the following: (i) Effective Date; or (ii) if the Administrative Claim is not Allowed as of the Effective Date, the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter. If the Allowed Administrative Claim is based on liabilities incurred by the Debtor in the ordinary course of its business after the Petition Date, then in accordance with the terms and conditions of the particular transaction giving rise to such Allowed Administrative Claims, without any further action by the holders of such Allowed Administrative Claims. All Administrative Claims for which no application is timely filed shall be forever barred.  Notwithstanding the foregoing, all Trustee Fee Claims will be satisfied on or before the Effective Date without need for the filing of an application.

**3.2    Professional Claims**

All requests for payment of Professional Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be filed no later than sixty (60) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Claims after notice and a hearing in accordance with the procedures established by

the Bankruptcy Code. The Debtor or Plan Administrator, as applicable, shall pay Professional Claims in Cash in the amount the Court Allows within ninety (90) days of the following: (i) Effective Date; or (ii) if the Professional Claim is not Allowed as of the Effective Date, the date on which an order Allowing such Professional Claim becomes a Final Order, or as soon as reasonably practicable thereafter. From and after the Confirmation Date, any requirement that Professionals comply with Sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Plan Administrator may employ and pay any Professional in the ordinary course of business without any further notice to, or action, order, or approval of, the Bankruptcy Court.

**3.3      Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim due and payable on or before the Effective Date shall receive on the Effective Date, payment in Cash in an amount equal to the amount of such Allowed Priority Tax Claim. To the extent any Allowed Priority Tax Claim is not due and owing on the Effective Date, such Claim shall be paid in full in Cash in accordance with the terms of any agreement between the Debtor and Holder of such Claim, or as may be due and payable under applicable non-bankruptcy law, or in the ordinary course of business.

## IV. CLASSIFICATION & TREATMENT OF CLAIMS

**4.1      Classification Summary**

The following table designates the Classes of Claims against the Debtor and specifies whether each such Class is: (i) Impaired or Unimpaired by the Plan; and (ii) entitled to vote to accept or reject the Plan in accordance with Section 1126 of the Bankruptcy Code. The table also designates, where applicable, those Classes deemed to reject this Plan in accordance with Section 1126 of the Bankruptcy Code. The Bankruptcy Code provides that Unimpaired Classes are conclusively presumed to accept this Plan, and therefore, solicitation of acceptance from such Classes is not required.

A Claim is placed in a particular Class only to the extent that such Claim falls within the designation of that Class, and is classified in other Classes to the extent that any portion of the Claim falls within the designation of such other Classes.

1332543v.1

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| 1 | Secured Claims | Unimpaired | No (Presumed to Accept)[1] |
| 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| 3 | Unsecured Claims | Impaired | Yes |
| 4 | Subordinated Claim | Impaired | Yes |

**4.2    Treatment of Classes of Claims**

Except to the extent that a Holder of an Allowed Claim, as applicable, agrees to a less favorable treatment, such Holder shall receive under the Plan the treatment described below in exchange for such Holder's Allowed Claim against the Debtor, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim shall receive such treatment on the Effective Date, or as soon as practicable thereafter.

**(i)    Class 1 – Secured Claims**

(1)    *Classification*: Class 1 consists of any Secured Claims against the Debtor.

(2)    *Treatment*: Each Holder of an Allowed Secured Claim shall receive, in full and final satisfaction, release and settlement of such Claim, one of the following alternative treatments, at the election of the Plan Administrator: (i) payment in full in Cash on or as soon as reasonably practicable after the later of (a) the Effective Date and (b) the date the Claim becomes due and payable by its terms; (ii) the legal, equitable and contractual rights to which such Claim entitles the holder, unaltered by the Plan; (iii) the treatment described in Section 1124(2) of the Bankruptcy Code; or (iv) all collateral securing such Claim, without representation or warranty by or recourse against the Debtor. To the extent that the value of the collateral securing an Allowed Secured Claim is less than the amount of such Allowed Secured Claim, the undersecured portion of such Claim shall be

---

[1] All were paid in full at the sale closing on October 31, 2016.

treated for all purposes under the Plan as an Allowed Unsecured Claim and shall be classified as such.

(3) *Voting*: Class 1 is Unimpaired and conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

**(ii)    Class 2 – Other Priority Claims**

(1) *Classification*: Class 2 consists of any Other Priority Claims against the Debtor.

(2) *Treatment*: Each Holder of an Allowed Other Priority Claim, in full and complete satisfaction, release and settlement of such Claim, shall be paid in full in Cash on or as soon as reasonably practicable after the later of: (i) the Effective Date; and (ii) the date on which such Claim becomes Allowed, unless such holder shall agree to a different and less favorable treatment of such Claim (including, without limitation, any different treatment that may be provided for in the documentation governing such Claim or in a prior agreement with such holder).

(3) *Voting*: Class 2 is Unimpaired and conclusively presumed to have accepted the Plan under Section 1126(f) of the Bankruptcy Code, and are not entitled to vote to accept or reject the Plan.

**(iii)   Class 3 – Unsecured Claims**

(1) *Classification*: Class 3 consists of any Unsecured Claims against the Debtor.

(2) *Treatment*: The Holders of Allowed Unsecured Claims shall from time to time receive pro rata distributions of Cash from the Net Proceeds.

(3) *Voting*: Class 3 is Impaired and entitled to vote to accept or reject the Plan.

**(iv)   Class 4 – Subordinated Claim**

(1) *Classification*: Class 4 consists of the Allowed Subordinated Claim. 1199SEIU Health Care Employees Pension Fund is the only holder of a Claim in Class 4, which Claim was Allowed pursuant to the terms of the Settlement in the amount of $5,759,751.00.

(2) *Treatment*: The holder of the Allowed Subordinated Claim shall receive a distribution of Cash from the Net Proceeds remaining, if any, after payment in full of all Allowed Unsecured Claims until such holder receives 100% of the Allowed amount of its Allowed Claim without interest.

10

       (3)    *Voting*: Class 4 is Impaired and entitled to vote to accept or reject the Plan.

## 4.3    Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtor's rights regarding any Unimpaired Claim, including legal and equitable defenses to or setoffs or recoupments against any such Unimpaired Claim.

## V. MEANS FOR IMPLEMENTATION

## 5.1    Implementation of the Plan

The Plan will be implemented by the Plan Administrator in a manner consistent with the terms and conditions set forth in the Plan and the Confirmation Order.

## 5.2    Plan Funding

The funds utilized to make Cash payments under the Plan have been and/or will be generated from, among other things, collections, the proceeds of sale of substantially all of the Debtor's assets, and the proceeds of the liquidation or other disposition of the remaining Assets of the Debtor

## 5.3    Vesting of Assets in the Debtor

Except as expressly provided otherwise in the Plan, on the Effective Date, all Assets shall vest with the Plan Administrator free and clear of all Claims, liens, encumbrances, charges, interests and other rights and interests of Creditors and holders of Interests arising on or before the Effective Date, but subject to the terms and conditions of the Plan and the Confirmation Order

## 5.4    Continuing Existence

From and after the Effective Date, the Debtor shall continue in existence for the purposes of: (i) winding up its affairs as expeditiously as reasonably possible; (ii) liquidating, by conversion to Cash or other methods, any remaining Assets as expeditiously as reasonably possible; and (iii) performing all such other acts and conditions required by and consistent with consummation of the terms of the Plan and the wind down of its affairs.

## 5.5    Liquidation of Remaining Assets

Subject to the terms of the Plan, from and after the Effective Date, the Plan Administrator may, without further approval of the Court, use, sell at public or private sale, assign, transfer, or otherwise dispose of any remaining Assets and convert same to Cash; provided, however, that

11

the sale of any remaining Assets shall be subject to the approval of the Post-Effective Date Committee (which approval shall not be unreasonably withheld).

### 5.6    Management of Debtor

On the Effective Date, the members of the Debtor's board of directors shall be deemed to have resigned therefrom, and shall be relieved of all further responsibilities with the operation of the Debtor becoming the general responsibility of the Plan Administrator in accordance with the Plan.

### 5.7    Powers & Obligations of the Plan Administrator

**(i)**    The Confirmation Order shall provide for the appointment of the Plan Administrator and for compensation to be paid to the Plan Administrator. The Plan Administrator shall be deemed the Estate's representative in accordance with Section 1123 of the Bankruptcy Code and shall have all powers, authority and responsibilities specified under Sections 704 and 1106 of the Bankruptcy Code.

**(ii)**    The Plan Administrator will act for the Debtor in a fiduciary capacity as applicable to a board of directors, subject to the provisions of the Plan and vested with all of the rights and authority of a Chapter 7 trustee and as augmented by the Plan. On the Effective Date, the Plan Administrator shall succeed to all of the rights of the Debtor with respect to the Assets necessary to protect, conserve, and liquidate all Assets as quickly as reasonably practicable, including, without limitation, control over (including the right to waive) all attorney-client privileges, work-product privileges, accountant-client privileges and any other evidentiary privileges relating to the Assets that, prior to the Effective Date, belonged to the Debtor pursuant to applicable law. The powers and duties of the Plan Administrator shall include, without further order of the Court, except where expressly stated otherwise, the right:

(a)    to invest Cash in accordance with Section 345 of the Bankruptcy Code, and withdraw and make distributions of Cash to holders of Allowed Claims and pay taxes and other obligations owed by the Debtor or incurred by the Plan Administrator in connection with the wind-down of the Estate in accordance with the Plan;

(b)    to receive, manage, invest, supervise, and protect the Assets, including paying taxes or other obligations incurred in connection with administering the Assets;

(c)    subject to the approval of the Post-Effective Date Committee (which approval shall not be unreasonably withheld), to engage attorneys, consultants, agents, employees and all  professional persons, to assist the Plan Administrator with respect to the Plan Administrator's responsibilities;

(d)    subject to the approval of the Post-Effective Date Committee (which approval shall not be unreasonably withheld), or further order of the Court, to pay the fees and expenses for the attorneys, consultants, agents, employees and professional persons engaged by the Plan Administrator and the Post-Effective Date Committee and to pay all other expenses in

connection with administering the Plan and for winding down the affairs of the Debtor in each case in accordance with the Plan;

(e)　to execute and deliver all documents, and take all actions, necessary to consummate the Plan and wind-down the Debtor's business;

(f)　subject to the approval of the Post-Effective Date Committee (which approval shall not be unreasonably withheld), to dispose of, and deliver title to others of, all the remaining Assets;

(g)　to coordinate the collection of outstanding accounts receivable;

(h)　to the possession of all of the Debtor's books and records, to coordinate the storage, maintenance, and disposition of the Debtor's books and records;

(i)　to oversee compliance with the Debtor's accounting, finance and reporting obligations;

(j)　to prepare United States Trustee quarterly reports;

(k)　to oversee the filing of final tax returns, audits and corporate dissolution documents if required;

(l)　to perform any additional corporate actions as necessary to carry out the wind-down, liquidation and ultimate dissolution of the Debtor, in accordance with applicable law;

(m)　to communicate regularly with and respond to inquiries from the Post-Effective Date Committee, including providing to the Post-Effective Date Committee information on all receipts and disbursements on a quarterly basis;

(n)　subject to Section 8 of the Plan, to object to Claims against the Debtor;

(o)　subject to Section 8 of the Plan, to compromise and settle Claims against the Debtor;

(p)　to substitute for the Committee as plaintiff in the D&O Litigation and to act on behalf of the Debtor in all adversary proceedings and contested matters (including, without limitation, any Causes of Action), then pending or that can be commenced in the Court and in all actions and proceedings pending or commenced elsewhere, and to settle, retain, enforce, or dispute any adversary proceedings or contested matters (including, without limitation, any Causes of Action) and otherwise pursue actions involving Assets of the Debtor that could arise or be asserted at any time under the Bankruptcy Code or otherwise, unless otherwise specifically waived or relinquished in the Plan, provided, however, that settlements by the Plan Administrator of Causes of Action shall be subject to the approval of the Post-Effective Date Committee, which approval shall not be unreasonably withheld, or further order of the Court;

(q)　to negotiate and accept assignments of claims, demands, and causes of

13

action for the benefit of the Debtor's estate, upon determining in the Plan Administrator's discretion that such claims, demands, and causes of action assert colorable and meritorious claims, and to recognize the claims of the assignor for purposes of participating in Class 3 and receiving a distribution as a Holder of an Allowed Claim in Class 3;

       (r)     to implement and/or enforce all provisions of the Plan;

       (s)     to implement and/or enforce all agreements entered into prior to the Effective Date, and

       (t)     to use such other powers as may be vested in or assumed by the Plan Administrator pursuant to the Plan or Bankruptcy Court order or as may be necessary and proper to carry out the provisions of the Plan.

## 5.8    Plan Administrator's Bond

The Plan Administrator shall obtain and maintain a bond in an amount equal to one hundred and ten percent (110%) of Remaining Cash. As Remaining Cash is reduced through distributions and payments by the Plan Administrator and/or additional Cash comes into the Estate, the Plan Administrator shall, at the appropriate time, adjust the amount of the bond to an amount equal to at least 110% of the amount of Cash in the Estate.

## 5.9    Post-Effective Date Committee

**(i)**    On the Effective Date, the Committee shall continue as the Post-Effective Date Committee. The Post-Effective Date Committee shall be comprised of the members of the Committee, unless any particular member thereof opts not to be a member thereof. If a member of the Post-Effective Date Committee resigns or is removed, a replacement who holds an Unsecured Claim against the Debtor may be appointed by the remaining members of the Post-Effective Date Committee. The duties and powers of the Post-Effective Date Committee shall terminate upon the closing of the Case. The Post-Effective Date Committee's role shall be to consult with the Plan Administrator, and to perform the functions set forth in the Plan.

**(ii)**    The Post-Effective Date Committee shall have the power and authority to utilize the services of counsel and a financial advisor as and if necessary to perform the duties of the Post-Effective Date Committee and to authorize and direct such Persons to act on behalf of the Post-Effective Date Committee in connection with any matter requiring its attention or action, including but not limited to the D&O Litigation. The Plan Administrator shall pay the reasonable and necessary fees and expenses of the Post-Effective Date Committee's counsel and financial advisor without the need for Court approval.

**(iii)**    Except for the reimbursement of reasonable, actual costs and expenses incurred in connection with their duties as members of the Post-Effective Date Committee, the members of the Post-Effective Date Committee shall serve without compensation. Reasonable expenses incurred by members of the Post-Effective Date Committee may be paid by the Plan Administrator without need for Court approval.

**(iv)**     The Plan Administrator shall report all material matters to the Post-Effective Date Committee.

**5.10     Rights of Action**

**(i)**     In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Plan Administrator may pursue all reserved rights of action, including, without limitation, Causes of Action of the Debtor. Any distributions provided for in the Plan and the allowance of any Claim for the purpose of voting on the Plan are and shall be without prejudice to the rights of the Plan Administrator to pursue and prosecute any reserved rights of action. Except as otherwise set forth in the Plan, all Causes of Action of the Debtor shall survive confirmation of the Plan and the commencement and prosecution of Causes of Action of the Debtor shall not be barred or limited by res judicata or any estoppel, whether judicial, equitable or otherwise. In reviewing the Plan and the Disclosure Statement, Creditors and other parties should consider that Causes of Action of the Debtor exist or may exist against them, that, except as otherwise set forth in the Plan, the Plan preserves all Causes of Action of the Debtor, and that the Plan authorizes the Plan Administrator to prosecute all Causes of Action of the Debtor.

**(ii)**     Unless expressly released pursuant to the Plan or a Final Order of the Bankruptcy Court, the failure to identify a Person in this Plan shall not constitute a release of any Causes of Action against such Person.

**(iii)**     The Causes of Action retained by the Debtor that can be pursued and prosecuted by the Plan Administrator include, without limitation:

**(a)**     Former Resident Litigation (as defined herein).

**(b)**     D&O Litigation (as defined herein).

**(c)**     Any Causes of Action of the Debtor related to any of the pre-petition lawsuits with respect to which the Debtor was a party and any pre-petition leases and contracts to which the Debtor was a party. To the extent any person was not identified on, or any transfer, lawsuit, contract or lease was inadvertently omitted from the Schedules, such omission shall not constitute a waiver of any Causes of Action of the Debtor related to such omitted person, transfer, lawsuit, contract or lease, and the Debtor expressly retains and preserves all such Causes of Action.  Moreover, for the avoidance of doubt, recovery related to any Causes of Action of the Debtor shall not be limited to any amounts set forth in the Schedules.

**(d)**     Causes of Action of the Debtor retained by the Debtor by a Final Order of the Court as set forth in the Confirmation Order.

**(e)**     Causes of Action of the Debtor to recover money or property from customers, vendors and/or employees whether based on contract or tort, including without limitation all rights pursuant to Section 502(d) of the Bankruptcy Code to assert and prosecute any Causes of Action of the Debtor against creditors solely for the purpose of establishing that a creditor's claim against the Debtor must be disallowed for failure to repay an avoidable transfer.

(f)     Causes of Action of the Debtor to recover accounts receivable or other receivables or rights to payment created or arising in the ordinary course of the Debtor's business.

(g)     Causes of Action of the Debtor against vendors, suppliers of goods or services, or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guaranties, indemnities or setoffs.

(h)     Causes of Action of the Debtor against utilities, vendors, suppliers of goods or services, or other parties for wrongful termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations.

(i)     Causes of Action against utilities, vendors, suppliers of goods or services, or other parties for failure to fully perform or to condition performance on additional requirements under contracts with the Debtor before the assumption or rejection of the subject contracts.

(j)     Causes of Action of the Debtor for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, lessor, utility, supplier, vendor, insurer, surety, lender, bondholder, lessor or other party.

(k)     Causes of Action of the Debtor against any current or former director, officer, trustee, employee or agent of the Debtor arising out of employment related matters, including but not limited to Causes of Action of the Debtor relating to the MAP and FIDA programs, the operation of the Debtor's business, employment contracts, wage and benefit overpayments, travel, expense reimbursements or employee fraud or wrongdoing.

(l)     Causes of Action of the Debtor against, among others, related entities including but not limited to HHH Choices Health Plan, LLC and Hebrew Hospital Home of Westchester, Inc.

(m)     Causes of Action of the Debtor against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters.

(n)     Causes of Action of the Debtor that are counterclaims and/or defenses relating to any action brought against the Debtor or the Plan Administrator.

(o)     Causes of Action of the Debtor related to or in connection with pre-petition lawsuits with respect to which the Debtor was a party, whether or not identified in the Schedules.

(p)     Causes of Action of the Debtor against local, state and federal taxing authorities for refunds of overpayments or other payments.

(q)     Contract, tort or equitable Causes of Action of the Debtor that may exist or subsequently arise, whether or not identified on the Schedules.

16

(r)     Equitable subordination Causes of Action of the Debtor arising under Section 510 of the Bankruptcy Code or other applicable law.

(s)     Causes of Action of the Debtor arising under Section 362 of the Bankruptcy Code.

**(iv)**     The Debtor reserves the right of the Plan Administrator to perform a thorough post-confirmation investigation of Causes of Action of the Debtor and to pursue any such additional Causes of Action of the Debtor that may be identified regardless of whether such Causes of Action of the Debtor were specifically identified or known as of the Confirmation Date.

## 5.11    Privileges

All of the Debtor's privileges including, but not limited to, corporate privileges, confidential information, work product protection, attorney-client privileges and other immunities or protections shall be transferred, assigned and delivered to the Plan Administrator, without waiver, limitation or restriction and shall vest with the Plan Administrator on the Effective Date.

## 5.12    Corporate Action

On the Effective Date, the appointment of the Plan Administrator, and any and all other matters provided for under the Plan involving corporate action by the Debtor, its directors or its trustees, including, without limitation, the transfer of management responsibilities of the Debtor to the Plan Administrator, shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to applicable law, without any requirement of further action by the Debtor's directors, officers or trustees. Upon the distribution of all Assets pursuant to the Plan and the filing by the Plan Administrator of a certification to that effect with the Bankruptcy Court (which may be included in the application for the entry of the final decree), the Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtor or payments to be made in connection therewith; provided, however, that the Debtor and/or the Plan Administrator on behalf of the Debtor may take appropriate action to dissolve under applicable law. From and after the Effective Date, the Debtor shall not be required to file any document, or take any action, to withdraw its business operations from any states where the Debtor previously conducted business.

## 5.13    Cancellation of Existing Instruments & Agreements

On the Effective Date, except as otherwise provided herein, all instruments and agreements governing any Claim against the Debtor shall be deemed cancelled and terminated, and the obligations of the Debtor relating to, arising under, in respect of, or in connection with such instruments or agreements shall be deemed released and/or satisfied as to the Debtor.

## 5.14    Setoffs

The Plan Administrator may, pursuant to and to the extent permitted by applicable law, setoff against any Claim asserted against the Debtor and/or the Assets, and the payments or other

distributions to be made pursuant to the Plan in respect of such Claim, any Claims of any nature whatsoever that that Debtor or the Estate may have against the holder of such Claim, provided that the Plan Administrator shall give the holder of such Claim notice of the proposed setoff and the holder of such Claim does not object to the proposed setoff within thirty (30) days service of such notice; provided further that if an objection is timely raised to a proposed setoff, the Plan Administrator may seek relief from the Bankruptcy Court to effectuate the setoff; and provided further that neither the failure to effect a setoff, nor the allowance of any Claim against the Debtor hereunder, shall constitute a waiver or release of any such Claim the Debtor or the Estate may have against such holder.

### 5.15 Funding of the Disputed Claims Reserve

**(i)** The portion of the Assets attributable to Disputed Administrative, Priority Tax, Other Priority and Unsecured Claims, shall be held by the Plan Administrator in the "Disputed Claims Reserve." As Disputed Claims are resolved, excess Cash in the Disputed Claims Reserve shall be made available for distribution to the holders of Allowed Claims in accordance with the Plan, provided that there is sufficient Cash to administer the Plan and pay Plan expenses. The Plan Administrator may set aside from the Assets an amount of Cash that the Plan Administrator determines is necessary to pay ongoing expenses of administering the Plan.

**(ii)** For the purposes of effectuating the distributions to the holders of Allowed Claims, the Bankruptcy Court (or another court, if applicable) may estimate the amount of Disputed Claims pursuant to Section 502(c) of the Bankruptcy Code, in which event the amounts so estimated shall be deemed the amounts of the Disputed Claims for purposes of distribution under the Plan. In lieu of estimating the amount of any Disputed Claim for purposes of allowance and distribution, the Bankruptcy Court (or another court, if applicable) may estimate the amount to be reserved for such Disputed Claim (singularly or in the aggregate), or such amount may be fixed by agreement in writing by and between the Plan Administrator and the holder of a Disputed Claim. In the event that the Bankruptcy Court (or another court, if applicable) estimates any contingent or unliquidated Claim, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court (or another court, if applicable). If the estimated amount constitutes a maximum limitation on such Claim, the Plan Administrator may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. Claims may be estimated by the Bankruptcy Court (or another court, if applicable) and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court (or another court, if applicable).

### 5.16 Plan Distributions

The Plan Administrator shall make distributions to holders of Allowed Claims in accordance with Articles III and IV of the Plan on or as soon as reasonably practicable after the Effective Date. From time to time, in consultation with the Post-Effective Date Committee, the Plan Administrator shall make Pro Rata distributions to holders of Allowed Class 3 Claims in accordance with Article IV of the Plan. Notwithstanding the foregoing, the Plan Administrator may retain such amounts: (i) as are reasonably necessary to meet contingent liabilities (including Disputed Claims) and to maintain the value of the Assets of the Estate during liquidation; (ii) to

pay reasonable administrative expenses (including the costs and expenses of the Plan Administrator and the Post-Effective Date Committee and the fees, costs and expenses of all professionals retained by the Plan Administrator and the Post-Effective Date Committee, and any taxes imposed in respect of the Assets); (iii) to satisfy other liabilities to which the Assets are otherwise subject, in accordance with the Plan; and (iv) to establish any necessary reserve. All distributions to the holders of Allowed Claims shall be made in accordance with the Plan. The Plan Administrator shall withhold from amounts distributable to any Person any and all amounts determined in the Plan Administrator's reasonable sole discretion to be required by any law, regulation, rule, ruling, directive or other governmental requirement. Holders of Allowed Claims shall, as a condition to receiving distributions, provide such information and take such steps as the Plan Administrator may reasonably require to ensure compliance with withholding and reporting requirements and to enable the Plan Administrator to obtain certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law. In the event that a holder of an Allowed Claim does not comply with the Plan Administrator's requests in the preceding sentence within ninety (90) days, no distribution shall be made on account of such Allowed Claim and the Plan Administrator shall reallocate such distribution for the benefit of all other holders of Allowed Claims in accordance with the Plan.

**5.17    Cash Distributions**

The Plan Administrator shall not be required to make interim or final Cash distributions in an amount less than $10.00. Any funds so withheld and not distributed on an interim basis shall be held in reserve and distributed in subsequent distributions to the extent the aggregate distribution exceeds $10,000. Should a final distribution to any holder of an Allowed Claim not equal or exceed $10.00, that sum shall be distributed to other holders of Allowed Claims in accordance with the Plan.

**5.18    Delivery of Plan Distributions**

All distributions under the Plan on account of any Allowed Claims shall be made at the address of the holder of such Allowed Claim as set forth in a filed Proof of Claim or on the register on which the Plan Administrator records the name and address of such holders or at such other address as such holder shall have specified for payment purposes in a written notice to the Plan Administrator at least fifteen (15) days prior to such distribution date. In the event that any distribution to any holder is returned as undeliverable, the Plan Administrator shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Plan Administrator has determined the then-current address of such holder, at which time such distribution shall be made to such holder without interest; provided, however, that such undeliverable or unclaimed distributions shall become Unclaimed Property at the expiration of one hundred twenty (120) days from the date such distribution was originally made. The Plan Administrator shall reallocate the undeliverable and unclaimed distributions for the benefit of all other holders of Allowed Claims in accordance with the Plan.

1332543v.1

**5.19    Distributions to Holders as of the Confirmation Date**

As of the close of business on the Confirmation Date, the claims register shall be closed, and there shall be no further changes in the record holders of any Claims. Neither the Debtor nor the Plan Administrator, as applicable, shall have any obligation to recognize any transfer of any Claims occurring after the close of business on the Confirmation Date, and shall instead be entitled to recognize and deal for all purposes under the Plan (except as to voting to accept or reject the Plan pursuant to Section 6.1 of the Plan) with only those holders of record as of the close of business on the Confirmation Date.

**5.20    Abandoned Assets**

Upon the election of the Plan Administrator, with the approval of the Post-Effective Date Committee (which approval shall not be unreasonably withheld), the Plan Administrator may abandon any Assets without the need for additional approval of the Bankruptcy Court, and upon such abandonment, such Assets shall cease to be Assets of the Estate.

**5.21    Windup**

After: (i) the Plan has been fully administered; (ii) all Disputed Claims have been resolved; (iii) all Causes of Action have been resolved; and (iv) all Assets have been reduced to Cash or abandoned, the Plan Administrator shall effect a final distribution of all Cash remaining (after reserving sufficient Cash to pay all unpaid expenses of administration of the Plan and all expenses reasonably expected to be incurred in connection with the final distribution) to holders of Allowed Claims in accordance with the Plan.

**5.22    Disposition of Unclaimed Funds**

On or about the time that the final distribution is made, the Plan Administrator may make a charitable donation with undistributed funds if, in the reasonable judgment of the Plan Administrator, the cost of calculating and making the final distribution of the remaining funds exceeds the benefits to the holders of Allowed Claims who would otherwise be entitled to such distributions and such charitable donation is provided to a non-for-profit, non-religious organization that is not related to the Debtor or the Plan Administrator.

**5.23    Indefeasibility of Distributions**

All distributions provided for under the Plan shall be indefeasible.

**5.24    Distribution of Unclaimed Property**

Any distribution of property (Cash or otherwise) provided for under the Plan which is unclaimed after one hundred twenty (120) days following such distribution (collectively, "Unclaimed Property") shall irrevocably revert to the Estate for re-distribution in accordance with the Plan.

1332543v.1

**5.25    Saturday, Sunday, or Legal Holiday**

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next Business Day.

**5.26    Final Order**

Any requirement in the Plan for a Final Order may be waived by the Debtor.

VI. ACCEPTANCE OR REJECTION OF PLAN

**6.1    Eligibility to Vote**

The holders of Claims in Class 3 (Unsecured Claims) are entitled to vote if:  (i) the Debtor has listed such Claim on its Schedules and such Claim is not scheduled as disputed, contingent, or unliquidated; (ii) no objection has been filed as to such holder's Claim, either before or after the voting record date set forth in the Bankruptcy Court's order approving the Disclosure Statement; or (iii) the holder of such Claim has filed a Proof of Claim on or before the applicable Claims Bar Date, except where the Debtor has specifically agreed to a late-filed Proof of Claim.

Any Claim in this impaired Class to which an objection is filed and not withdrawn or dismissed is not entitled to vote, regardless of whether a ballot was transmitted to the holder of such Claim, unless the Bankruptcy Court, pursuant to Bankruptcy Rule 3018(a), and upon application of the holder whose Claim was objected to, temporarily allows the Claim in an amount that the Bankruptcy Court deems proper solely for the purpose of voting on the Plan.

The Debtor may disregard a vote if the Bankruptcy Court determines, pursuant to Section 1126(e) of the Bankruptcy Code, that it was not solicited or procured in good faith, or in accordance with the provisions of the Bankruptcy Code.

The following Classes are *not* entitled to vote to accept or reject the Plan: (i) 1 – Secured Claims; and (ii) 2 – Other Priority Claims.

**6.2    Votes Required for Acceptance**

Under the Bankruptcy Code, acceptance of a plan of reorganization by a Class of Claims is determined by calculating the amount and, if a Class of Claims, the number of Claims voting to accept, as a percentage of the Allowed Claims or Interests, as applicable, that have voted. Acceptance by a Class of Claims requires an affirmative vote of more than one-half (1/2) in number of total Allowed Claims that have voted and an affirmative vote of at least two-thirds (2/3) in dollar amount of the total Allowed Claims that have voted.

**6.3    Cramdown**

If Class 3 is the only Impaired Class that accepts the Plan, the Debtor intends to seek the application of the statutory requirements set forth in Section 1129(b) of the Bankruptcy Code for

21

Confirmation of the Plan, despite the lack of acceptance by all Impaired Classes. The Debtor reserves the right to modify the Plan to the extent that Confirmation pursuant to Section 1129(b) of the Bankruptcy Code requires modification.

## VII. TREATMENT OF EXECUTORY CONTRACTS

**7.1    Assumption or Rejection of Executory Contracts**

Effective on and as of the Confirmation Date, all Executory Contracts are hereby specifically deemed rejected, except for any Executory Contract: (i) that has been specifically assumed or assumed and assigned by the Debtor on or before the Confirmation Date with the approval of the Bankruptcy Court; (ii) in respect of which a motion for assumption or assumption and assignment has been filed with the Bankruptcy Court on or before the Confirmation Date; or (iii) that is specifically designated as a contract to be assumed on a schedule to the Plan; provided, however, that to the extent any insurance policy of the Debtor, or any insurance policy that names or otherwise covers the Debtor as an insured, is deemed or determined to be an Executory Contract, any such insurance policy is deemed assumed by the Debtor effective on and as of the Confirmation Date.

**7.2    Approval of Assumption or Rejection of Executory Contracts**

Entry of the Confirmation Order by the Clerk of the Court, but subject to the condition that the Effective Date occur, shall constitute: (i) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption or assumption and assignment of the Executory Contracts assumed or assumed and assigned pursuant to Section 7.1 of the Plan; and (ii) the approval, pursuant to Sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the Executory Contracts rejected pursuant to Section 7.1 of the Plan.

**7.3    Rejection Damages Claims**

Claims against the Debtor arising out of the rejection of Executory Contracts pursuant to the Plan must be filed with the Court no later than forty-five (45) days after the Effective Date. *Any such Claims not filed within such time shall be forever barred from assertion against the Debtor and/or its property*.

**7.4    Compensation & Benefit Programs**

To the extent not previously terminated, all employment and severance agreements and policies, and all employee compensation and benefit plans, policies and programs of the Debtor applicable generally to their respective current employees or officers as in effect on the Confirmation Date, including, without limitation, all savings plans, retirement plans, health care plans, disability plans, severance benefit plans, incentive plans and life, accidental death and dismemberment insurance plans, shall be terminated as of the Confirmation Date.

22

# VIII. PROVISIONS FOR RESOLVING & TREATING CLAIMS

## 8.1 Prosecution of Disputed Claims

Except as otherwise provided in the Plan, the Plan Administrator shall have the right to object to all Claims against the Debtor on any basis, including those Claims against the Debtor that are not listed in the Schedules, that are listed therein as disputed, contingent, and/or unliquidated, that are listed therein at a lesser amount than asserted by the respective Creditor, or that are listed therein for a different category of claim than asserted by the respective Creditor. Subject to further extension by the Court for cause with or without notice, the Plan Administrator may object to the allowance of Claims against the Debtor up to one hundred eighty (180) days after the Effective Date; provided, however, that an objection to a Claim against the Debtor based on Section 502(d) of the Bankruptcy Code may be made at any time in any adversary proceeding against the holder of any relevant Claim. The filing of a motion to extend the deadline to object to any Claims against the Debtor shall automatically extend such deadline until a Final Order is entered on such motion. In the event that such motion to extend the deadline to object to Claims against the Debtor is denied by the Court, such deadline shall be the later of the current deadline (as previously extended, if applicable) or 30 days after the Court's entry of an order denying the motion to extend such deadline. From and after the Effective Date, the Plan Administrator shall succeed to all of the rights, defenses, offsets, and counterclaims of the Debtor and the Committee in respect of all Claims against the Debtor, and in that capacity shall have the power to prosecute, defend, compromise, settle, and otherwise deal with all such objections, subject to the terms of the Plan.

## 8.2 Settlement of Disputed Claims

**(i)** Pursuant to Bankruptcy Rule 9019(b), subject to Section 8.2 of the Plan, the Plan Administrator may settle any Disputed Claim (or aggregate of Claims if held by a single Creditor), respectively, without notice, a Court hearing or Court approval. Alternatively, the Plan Administrator may seek Court approval of the proposed settlement upon expedited notice and a hearing.

**(ii)** The Plan Administrator shall give notice to the Post-Effective Date Committee of: (i) a settlement of any Disputed Class 3 Claim (or aggregate of Claims if held by a single Creditor) that results in the disputed portion of such Disputed Class 3 Claim(s) being Allowed in an amount in excess of $200,000; or (ii) a settlement of any Disputed Administrative/Priority Claims or Disputed Secured Claim (or aggregate of Claims if held by a single Creditor) that results in the disputed portion of such Disputed Claim(s) being Allowed in an amount in excess of $25,000. The Post-Effective Date Committee shall have ten (10) days after service of such notice to object to such settlement. Any such objection shall be in writing and sent to the Plan Administrator. If no written objection is received by the Plan Administrator prior to the expiration of such ten (10) day period, the Plan Administrator and the settling party shall be authorized to enter into the proposed settlement without a hearing or Court approval. If a written objection is timely received, the Plan Administrator, the settling party and the objecting party shall use good-faith efforts to resolve the objection. If the objection is resolved, the Plan Administrator and the settling party may enter into the proposed settlement (as and to the extent modified by the resolution of the objection) without further notice or Court approval, provided

23

that the Claim of the settling party against the Estate shall not be greater under the proposed settlement than that disclosed in the notice. Alternatively, the Plan Administrator may seek Court approval of the proposed settlement upon expedited notice and a hearing.

**8.3     No Distributions Pending Allowance**

Notwithstanding any provision in the Plan to the contrary, no partial payments and no partial distributions shall be made by the Plan Administrator with respect to any portion of any Claim against the Debtor if such Claim or any portion thereof is a Disputed Claim. In the event and to the extent that a Claim against the Debtor becomes an Allowed Claim after the Effective Date, the holder of such Allowed Claim shall receive all payments and distributions to which such holder is then entitled under the Plan.

## IX. CONDITIONS TO CONFIRMATION & EFFECTIVE DATE

**9.1     Conditions to Confirmation**

The following conditions are conditions precedent to Confirmation of the Plan unless waived by the Debtor pursuant to Section 9.2 of the Plan: (i) the Confirmation Order must be in a form and substance reasonably acceptable to the Debtor; and (ii) the Confirmation Order shall:

**(i)**     authorize the appointment of all parties appointed under or in accordance with the Plan, including, without limitation, the Plan Administrator, and direct such parties to perform their obligations under such documents;

**(ii)**     approve in all respects the transactions, agreements, and documents to be effected pursuant to the Plan;

**(iii)**     authorize the Plan Administrator and Post-Effective Date Committee to assume the rights and responsibilities fixed in the Plan;

**(iv)**     approve the exculpation and injunctions granted and created by the Plan;

**(v)**     order, find, and decree that the Plan complies with all applicable provisions of the Bankruptcy Code, including that the Plan was proposed in good faith; and

**(vi)**     except as otherwise specifically provided in the Plan, order that nothing in the Plan operates as a discharge, release, exculpation, or waiver of, or establishes any defense or limitation of damages to, any Claim or Cause of Action belonging to the Estate.

**9.2     Conditions to Effective Date**

The Plan shall not become effective unless and until the following conditions shall have been satisfied or waived pursuant to Section 9.2 of the Plan:

**(i)**     the Confirmation Date shall have occurred and the Confirmation Order, in a form consistent with the requirements of Section 9.1 of the Plan, shall have become a Final Order;

**(ii)** the Plan Administrator shall have been appointed;

**(iii)** all actions, documents and agreements necessary to implement the provisions of the Plan shall be reasonably satisfactory to the Debtor, and such actions, documents, and agreements shall have been effected or executed and delivered; and

**(iv)** all other actions required by the Plan to occur on or before the Effective Date shall have occurred.

## X. MODIFICATION, REVOCATION OR WITHDRAWAL OF PLAN

### 10.1    Modification

The Debtor may alter, amend or modify the Plan pursuant to Section 1127 of the Bankruptcy Code at any time prior to the Confirmation Date. After such time and prior to substantial consummation of the Plan, the Debtor may, so long as the treatment of holders of Claims against the Debtor under the Plan is not adversely affected, institute proceedings in Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, Disclosure Statement or Confirmation Order, and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, notice of such proceedings shall be served in accordance with Bankruptcy Rule 2002 or as the Bankruptcy Court shall otherwise order.

### 10.2    Revocation or Withdrawal

The Debtor reserves the right to revoke or withdraw the Plan at any time prior to the Effective Date. If the Debtor revokes or withdraws the Plan prior to the Effective Date, then the Plan shall be deemed null and void, and nothing contained in the Plan shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person, or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## XI. INJUNCTIONS, EXCULPATION & INDEMNIFICATION

### 11.1    Injunction

**Except as otherwise expressly provided in the Plan including, without limitation, the treatment of Claims against the Debtor, and preservation of the D&O Litigation, the entry of the Confirmation Order shall, provided that the Effective Date shall have occurred, operate to enjoin permanently all Persons that have held, currently hold or may hold a Claim against the Debtor,[2] from taking any of the following actions against the Debtor, the Plan Administrator, the Committee or members thereof, the Post-Effective Date Committee or members thereof, the Professionals, present and former officers, directors and employees of the Debtor, or any of their respective successors, heirs or assigns, or any of their respective assets or properties, on account of any Claim against the Debtor: (i)**

---

[2] To the extent a Person has a direct claim against any present or former directors, officers, trustees, agents, attorneys, advisors, members or employees of the Debtor, confirmation of the Plan will not enjoin such a claim.

commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind with respect to a Claim against the Debtor; (ii) enforcing, levying, attaching, collecting or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree or order with respect to a Claim against the Debtor; (iii) creating, perfecting or enforcing in any manner, directly or indirectly, any lien or encumbrance of any kind with respect to a Claim against the Debtor; (iv) asserting any setoff, right of subrogation or recoupment of any kind, directly or indirectly, against any Debt, liability or obligation due to the Debtor or its property or Assets with respect to a Claim against the Debtor; and (v) proceeding in any manner in any place whatsoever that does not conform to or comply with or is inconsistent with the provisions of the Plan; provided, however, nothing in this injunction shall preclude the holder of a Claim against the Debtor or the Board from pursuing any applicable insurance after the Case is closed, from seeking discovery in actions against third parties or from pursuing third-party insurance that does not cover Claims against the Debtor.

**11.2    Exculpation**

To the extent permissible under the Bankruptcy Code, the Debtor and its officers, directors and employees for any acts or omissions which may have occurred during the Chapter 11 Case. Also, to the extent permissible under the Bankruptcy Code: (i) the Committee and members of the Committee in their capacity as members of the Committee; (ii) the Plan Administrator; and (iii) the Professionals, shall not have or incur any liability to any Holder of any Claim for any act or omission in connection with, relating to, or arising out of the Chapter 11 Case and related proceedings, including, but not limited to, filing of the Chapter 11 Case, administration of the Chapter 11 Case, the formulation, negotiation, preparation, dissemination, approval, execution, administration, confirmation, implementation, or consummation of, as well as the solicitation of votes for, the Plan (including all distributions thereunder), or the Disclosure Statement; except for the D&O Litigation, bad faith, willful misconduct, reckless disregard of duty, criminal conduct, gross negligence, fraud, or self-dealing, or, in the case of an attorney professional and as required under Rule 1.8(h)(1) of the New York State Rules of Professional Conduct, malpractice; and, in all respects, the Debtor, the Committee and its members, and each of their respective members, officers, directors, employees, advisors, professionals, attorneys and agents, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.

**11.3    Indemnification**

The Plan Administrator and the members of the Post-Effective Date Committee shall be indemnified and receive reimbursement against and from all loss, liability, expense (including counsel fees) or damage which the Plan Administrator or the members of the Post-Effective Date Committee may incur or sustain in the exercise and performance of any of their respective powers and duties under the Plan, to the full extent permitted by law, except if such loss, liability, expense or damage is finally determined by a court of competent jurisdiction to result solely from the Plan Administrator's or the Post-Effective Date Committee member's willful misconduct, fraud, intentional misconduct or gross negligence. The amounts necessary for such

indemnification and reimbursement shall be paid by the Plan Administrator out of the Cash held by the Plan Administrator under the Plan. The Plan Administrator shall not be personally liable for this indemnification obligation or the payment of any expense of administering the Plan or any other liability incurred in connection with the Plan, and no person shall look to the Plan Administrator personally for the payment of any such expense or liability. This indemnification shall survive the death, resignation or removal, as may be applicable, of the Plan Administrator and/or the members of the Post-Effective Date Committee, and shall inure to the benefit of the Plan Administrator and the Post-Effective Date Committee's members and their respective successors, heirs and assigns, as applicable.

Upon the Bankruptcy Court's entry of the Confirmation Order, all Holders of Claims and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan by the Debtor and its respective affiliates, employees, advisors, officers, directors and agents.

## 11.4    Preservation of Insurance

The provisions of the Plan are not intended to and shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies, including the D&O Policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any current or former directors, trustees or officers of the Debtor, or any other Person, other than as expressly as set forth in the Plan.

## 11.5    Release of Liens

Except as otherwise provided herein, or in any contract, instrument, release, or other agreement or document created pursuant to the Plan, on the Effective Date, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estate shall be fully released and discharged.

## XII. RETENTION OF JURISDICTION

Pursuant to Sections 105(c) and 1142 of the Bankruptcy Code and notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising under the Bankruptcy Code or arising in, or related to, the Chapter 11 Case, to the fullest extent permitted by law.

## XIII. MISCELLANEOUS PROVISIONS

## 13.1    Governing Law

Except to the extent the Bankruptcy Code or Bankruptcy Rules apply, and subject to the provisions of any contract, lease, instrument, release, indenture, or other agreement or document entered into expressly in connection herewith, the rights and obligations arising hereunder shall

1332543v.1

be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to conflict-of-laws principles.

**13.2    Additional Documents**

On or before the Effective Date, the Debtor may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtor and all Holders of Claims receiving distributions pursuant to the Plan and all other parties in interest shall, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**13.3    Reservation of Rights**

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. None of the filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by the Debtor with respect to the Plan, the Disclosure Statement or supplemental filings shall be deemed an admission or waiver of any rights of the Debtor with respect to the Holders of Claims prior to the Effective Date.

**13.4    Preservation of Insurance**

The provisions of the Plan are not intended to and shall not diminish or impair in any manner the enforceability and/or coverage of any insurance policies, including the D&O Policies (and any agreements, documents, or instruments relating thereto) that may cover Claims against the Debtor, any current or former directors, trustees or officers of the Debtor, or any other Person, other than as expressly as set forth herein.

**13.5    Elimination of Vacant Classes**

Any Class of Claims that does not have a Holder of an Allowed Claim or a Claim temporarily Allowed by the Bankruptcy Court as of the date of the Confirmation Hearing shall be deemed eliminated from the Plan for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code.

**13.6    Successors and Assigns**

The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

**13.7    Substantial Consummation**

As soon as practicable after the Effective Date, the Plan Administrator shall file a report of substantial consummation with the Bankruptcy Court.

1332543v.1

**13.8    No Tax Advice**

The Plan will have tax consequences to the Debtor and Holders of Claims. No opinion of counsel has been sought or obtained with respect to any tax consequences of the Plan and no tax opinion is given by the Disclosure Statement or Plan. No rulings or determinations of the IRS or any other tax authorities have been obtained or sought with respect to the Plan, and the description below is not binding upon the IRS or such other authorities.

No representations are made regarding the particular tax consequences of the Plan to any Holder of a Claim. The tax consequences of the Plan to Holders of Claims are in many cases uncertain and may vary depending on a Holder's individual circumstances. Each Holder of a Claim is strongly urged to consult its own tax advisor regarding the federal, state, local and foreign tax consequences of the transactions described in the Plan.

**13.9    Entire Agreement**

Except as otherwise indicated, the Plan supersedes all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

**13.10    Plan Exhibits**

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan. After the exhibits and documents are filed, copies of such exhibits and documents shall be made available upon written request to the Debtor's counsel at the address herein, or by downloading such exhibits and documents from the Case Website: https://cases.primeclerk.com/HebrewHospital/Home-Index

**13.11    Severability**

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Debtor. In the event of any such holding, alteration or interpretation that is acceptable to the Debtor, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**13.12    Section 1125(e) Good Faith Compliance**

The Debtor shall be deemed to have acted in good faith under Section 1125(e) of the Bankruptcy Code.

**13.13   Section 1146(a) Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers of property under the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee or governmental assessment.

**13.14   Notices**

**(i)      Notices to the Debtor**

All notices, requests, and demands to or upon the Debtor shall be in writing to be effective, and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

| | | |
|---|---|---|
| HEBREW HOSPITAL SENIOR HOUSING, INC. | | LIPPES MATHIAS WEXLER FRIEDMAN, LLP |
| Attn:  James A. Fasolino | | Attn:  Raymond L. Fink |
| c/o McCullough Goldberger & Staudt, LLP | | John A. Mueller |
| 1311 Mamaroneck Avenue | *and* | 50 Fountain Plaza, Suite 1700 |
| Suite 340 | | Buffalo, New York 14202 |
| White Plains, New York 10605 | | Telephone:  (716) 853-5100 |
| Tel: (516) 6601737 | | Facsimile:  (716) 853-5199 |
| jfasolino@hhhinc.org | | rfink@lippes.com |
| | | jmueller@lippes.com |

**(ii)     Notices to the Plan Administrator**

All notices to or upon the Plan Administrator pursuant to the Plan shall be in writing to be effective, and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as set forth in the Plan Supplement.

**(iii)    Notices to the Professionals**

All notices to or upon the Professionals, including counsel to the Committee, pursuant to the Plan shall be in writing to be effective, and, unless otherwise expressly provided in the Plan, shall be deemed to have been duly given or made when actually delivered, or, in the case of notice by facsimile transmission, when received and telephonically confirmed.

1332543v.1

Dated: June 8, 2018                                      **LIPPES MATHIAS WEXLER FRIEDMAN, LLP**

                                                         */s/ John A. Mueller*
                                                         Raymond L. Fink, Esq.
                                                         John A. Mueller, Esq.
                                                         50 Fountain Plaza, Suite 1700
                                                         Buffalo, New York 14202-2216
                                                         Tel: (716) 853-5100
                                                         Fax: (716) 853-5199
                                                         rfink@lippes.com
                                                         jmueller@lippes.com

                                                         · *Counsel to HHSH*

1332543v.1